**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

ANNSELM MORPURGO, M.A.,

                          Plaintiff,

                 - against -

THE INCORPORATED VILLAGE OF SAG
HARBOR, and Gregory N. Ferraris as Mayor, and
J. Doe # 1 through # N of the Board of Trustees,
SAG HARBOR VILLAGE POLICE, and Thomas
Fabiano as Police Chief, Police Officer Patrick
Milazzo, and SAG HARBOR VILLAGE
BUILDINGS DEPARTMENT, and Timothy Platt
as Fire Marshal/Code Enforcer, and Buildings
Inspector Albert Daniels as material witness, and
SUFFOLK COUNTY WATER AUTHORITY,
and Paul Greenwood as Assistant Superintendent,
and CALECA & TOWNER, P.C., Andrew T.
Towner, Esq., and JOHN JERMAIN MEMORIAL
LIBRARY, Gregory N. Ferraris as President of the
Board of Trustees, and J. Doe # 1 through # N of the
Board of Trustees, JOHN JERMAIN FUTURE
FUND, Gail Slevin and Gregory N. Ferraris, CPA,
LLC, as Contacts, and J. DOE #1 through #N as
subscribers, GREGORY N. FERRARIS, THOMAS
FABIANO, PATRICK MILAZZO, TIMOTHY
PLATT, PAUL GREENWOOD, CHRISTINE
STANLEY a/k/a HELGA MORPURGO,
ANDREW T. TOWNER, ESQ., MICHAEL A.
WOLOHOJIAN, PETER DARROW, and other
persons J. DOE # 1 THROUGH # N as other
conspiring individuals upon Discovery,

                          Defendants.

-------------------------------------------------------------------X

**REPORT &
RECOMMENDATION**

CV 07-1149 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    PRELIMINARY STATEMENT

Before the Court is *Pro Se* Plaintiff's Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order which has been referred to me by District Judge Seybert for a Report and Recommendation.  This preliminary injunction motion seeks to enjoin the public auction by the state court appointed referee of certain property located at 6 Union Street, Sag Harbor, New York (the "Property") – property which Plaintiff states is her "sole residence."[1]  *See* Affidavit of Annselm Morpurgo In Support of Order to Show Cause and Temporary Restraining Order at ¶ 2;[2] Transcript of August 31, 2007 hearing at 17-18.[3]

Based upon the documentary evidence, written submissions, arguments advanced by the parties at the August 31, 2007 hearing, and the applicable law, I am respectfully recommending that Plaintiff's motion for a preliminary injunction and temporary restraining order be DENIED.

II.    FACTUAL BACKGROUND & PROCEDURAL SETTING

This action arises, at least in part, from certain rulings issued by the New York State Supreme Court, Suffolk County, in the related action entitled, *Helga Morpurgo a/k/a Christine Stanley v. Annselm Morpurgo, a/k/a Anna Selma Vinjie Morpurgo, individually and d/b/a Sag Harbor Art Center, Sag Harbor Savings Bank, Household Finance Corp., Discovery Bank and John C.*

---

[1]    Based on the representations made by the parties, the auction is currently scheduled for October 12, 2007.

[2]    All further references to the Affidavit of Annselm Morpurgo are cited as "Morpurgo Aff. at ¶ __."

[3]    All further references to the transcript of the August 31, 2007 hearing are cited as "Tr. at __."

*Cochrane as the Treasurer of Suffolk County* (the "State Action"). Both the State Action and the instant case concern the respective rights of two sisters, Helga and Annselm Morpurgo, to the Property. Much of the following factual background is taken from the October 15, 2004 and August 7, 2007 Orders from the State Action. Those Orders are annexed as Exhibits "A" and "B" to the Affirmation in Opposition of Andrew T. Towner, Esq.[4]

In the State Action, Helga Morpurgo asserts three (3) claims and seeks: (1) a judgment declaring that she is seized and possessed as a tenant in common in fee of 37.5% interest in the Property; (2) to have the Property sold under the direction of the state court with an accounting between the parties to determine responsibility for taxes, insurance, improvements and attorneys' fees and to have that the mortgage interest owing to Sag Harbor Savings Bank satisfied in full from the proceeds of the sale; and (3) a judgment against defendants in the amount of $5,000.00 with interest thereon from December 5, 2002.[5] *See* Towner Aff., Ex. A.

The state court's October 15, 2004 Order states that, by stipulated Order dated December 2, 2003, the parties consented to sell the Property for not less than $1.5 million and to distribute the net proceeds of the sale 62.5% to Annselm Morpurgo and 37.5% to Helga Morpurgo. *See id.* The parties were to report to the state court on the progress of the sale of the Property on February 17, 2003. *See id.* However, following unsuccessful negotiations regarding the value of the Property, each party moved for summary judgment. *See id.* In her motion for partial summary judgment, Helga Morpurgo moved for: (1) a judgment that she possessed the Property as a tenant in common

---

[4]     All further references to the Affirmation of Andrew T. Towner, Esq. are cited as "Towner Aff. at ¶ ___."

[5]     Helga Morpurgo, the named plaintiff in the State Action, is a Defendant in this federal lawsuit.

in fee of 37.5% interest in the Property and (2) for partition of the Property to be sold at public auction by a state court referee. *See id.* In her summary judgment cross-motion, Annselm Morpurgo argued that Helga Morpurgo had no standing to move for a partition of the Property because she had not contributed to the management of the Property nor the family business operating out of the Property since 1976. *See id.* Annselm Morpurgo further contended that: (1) Helga Morpurgo voluntarily abandoned the Property and (2) Helga Morpurgo could sell her interest to defendant and non-party Savant Garde Institute which allegedly has a lease to occupy the Property for 100 years, beginning in 1999. *See id.* In support of her motion for summary judgment in the State Action, Helga Morpurgo submitted a December 4, 2002 agreement, executed by Annselm Morpurgo, conveying a 37.5% ownership interest in the Property to Helga Morpurgo in consideration of Helga's forgiveness of a loan made to Annselm which was secured by a second mortgage. *See id.* She also submitted a copy of the lease between Annselm Morpurgo and the Savant Garde Institute which provides that upon sale of the Property, the Institute would receive either: (1) 25% of the net proceeds of the sale for its relocation, or (2) a 25% interest in the new title holding corporation which it could, at its option, either retain until needed, exchange for stock in another corporation, or immediately liquidate at market value to fund its relocation. *See id.* Helga Morpurgo further provided her own affidavit in which she averred that Annselm Morpurgo, while in exclusive possession, had let the Property fall into extreme disrepair. *See id.* According to Helga, she was forced to borrow funds to pay the property taxes since Annselm had not paid them and the sale of the Property was necessary to protect her equity in it. *See id.* The sale price advocated by Annselm, Helga claimed, is unrealistic and the Property, which once housed eight apartments, is uninhabitable and lacks heat and hot water. *See id.*

On October 15, 2004, State Supreme Court Judge Underwood found that Helga had established that she is a tenant in common with Annselm as to the Property and thus, Helga was entitled to bring a partition action pursuant to N.Y. Real Property Actions & Proceedings Law § 901.[6]  *See id.*  The court granted Helga Morpurgo's motion for summary judgment on the first two causes of action and denied Annselm Morpurgo's cross- motion for summary judgment.  *See id.* Judge Underwood directed the parties to settle an order of reference with the referee's fee to be paid equally by each party. *See id.*  He further directed the referee to sell the Property at public auction for not less than $1.5 million.  *See id.*

No bids were proffered at the public auction.  As a consequence, motion practice ensued in the State Action to lower the minimum bid price of the Property.  On March 15, 2005, Judge Whelan lowered the minimum bid price of the Property from $1.5 million to $1.1 million.  *See* Towner Aff., Ex. B.  After another unsuccessful auction, on August 7, 2007, the state court granted Helga's motion seeking to lower the selling price of the Property again – this time to $900,000.00. *See id.* Judge Whelan ordered that upon effectuation of the sale of the Property, 25% of the proceeds would be held in escrow by the Suffolk County Treasurer pending a determination of the rightful distribution of these proceeds by the court.  The court also directed that the remaining 75% of the proceeds from the sale be divided equally (37.5%) each between Helga and Annselm.

Annselm Morpurgo then filed the instant action in federal court.  On April 3, 2007, Annselm

---

[6]     N.Y. Real Prop. Act. & Proceedings Law § 901(1) provides:

> A person holding and in possession of real property as joint tenant
> or tenant in common, in which he has an estate of inheritance, or
> for life, or for years, may maintain an action for the partition of
> the property, and for a sale if it appears that a partition cannot be
> made without great prejudice to the owners.

filed a First Amended Complaint alleging that various officials and government entities, including the Incorporated Village of Sag Harbor and the Sag Harbor Village Police Department,

> acting under color of law in violation of 42 U.S.C. Section 1983 in concert and/or conspiracy with, and in sympathy with, the private interests of neighbors and predatory real estate developers, including Trustees of John Jermain Memorial Library, and community subscribers to John Jermain Future Fund, and by Plaintiff's sister Helga Morpurgo and her attorneys, Caleca & Towner, P.C., to violate Plaintiff's First, Fourth, Fifth and Fourteenth Amendment Rights and to deprive Plaintiff of all her civil rights and property without due process.

Compl. ¶ III(a). In her pleading, Annselm concedes that the Property is "extremely dilapidated and in danger of condemnation" – not because of Plaintiff's lack of care, but rather because of repeated attacks by vandals. *Id.* According to Annselm, these vandals are conspiring with the Village and the Sag Harbor Police Department to acquire the Property below fair market value so that the John Jermain Memorial Library can use the Property for its expansion. *See id.* Annselm further asserts that such vandals are known family members of Sag Harbor Village policemen with whom she has a history of problems dating back to 1976. *See id.* Counts 1 through 18 of Plaintiff's Complaint detail numerous instances in which Sag Harbor police and other individuals came onto the Property, resulting in the imposition of fines on her based on the condition of the Property.

On August 20, 2007, Plaintiff moved by Order to Show Cause seeking a preliminary injunction enjoining the public sale of the Property until a final disposition of this litigation on the merits. In her Affidavit, Plaintiff asserts that she holds "fee-interest sole title" to the Property which is her "sole residence." Morpurgo Aff. ¶ 2. Plaintiff alleges that Helga and the Caleca & Towner law firm have repeatedly engaged in a pattern of tortious interference with the fair market value of

the Property as part of a conspiracy with all or some other named Defendants who are acting under the color of state law. *Id.* at ¶ 3.

Defendant Helga Morpurgo filed an "Explanation and Statement" in opposition to Plaintiff's Order to Show Cause for Preliminary Injunction claiming that she is being denied her rightful entitlement to at least 37.5% of the value of the premises by Annselm's campaign of threats and filing of frivolous motions and lawsuits which have left Helga financially destitute. *See* Explanation and Statement of *Pro Se* Defendant Helga Morpurgo. Further, Helga Morpurgo contends Annselm abuses the federal process by attempting to obtain injunctive relief for the improper purpose of setting aside a duly rendered order and judgment in the State Action. *See* Affidavit in Opposition of Helga Morpurgo at ¶ 2-3.[7] Defendants seek an Order denying Plaintiff's application for a preliminary injunction, dismissal of this action, and the imposition of enforcement measures if Annselm seeks to revive the action. *See* Towner Aff. at ¶ 15.

Plaintiff has filed a reply stating that she never consented to sell the Property at a refereed partition auction. She also argues that the concurrent State Action cannot be cited by Defendants as a basis for dismissing the federal lawsuit since the litigations do not address the same claims. Pl.'s Reply at ¶¶ at 2, 3.

## III.  STANDARD OF REVIEW

### A.  PRELIMINARY INJUNCTIVE RELIEF

To obtain a preliminary injunction under Fed. R. Civ. P. 65, the movant is traditionally required to show (1) irreparable harm and (2) either (a) that it is likely to succeed on the merits or

---

[7]  All further references to the Affidavit of Helga Morpurgo are cited as "H. Morpurgo Aff. at ¶ __."

(b) sufficiently serious questions regarding the merits of the claim to make them fairly litigable, with the balance of the hardships tipping decidedly in the movant's favor. *See 1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 406 (2d Cir.), *cert. denied,* 546 U.S. 1033 (2005); *No Spray Coalition, Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir. 2001); *Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000). A preliminary injunction is a drastic and extraordinary remedy that should not be granted routinely. *See JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990); *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986); *Collagenex v. Ivax Corp.*, 375 F. Supp. 2d 120, 123 (E.D.N.Y. 2005). Movants seeking preliminary injunctive relief, therefore, have a "heavy burden" to sustain. *See Robert W. Stark, Jr. v. New York Exch., Inc.*, 466 F.2d 743, 744 (2d Cir. 1972); *Dopp v. Franklin Nat. Bank*, 461 F.2d 873, 878 (2d Cir. 1972); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F. Supp. 204, 207 (S.D.N.Y. 1996).

The decision whether to grant or deny a preliminary injunction rests within the Court's sound discretion. *Weight Watchers Int'l Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005); *Sierra Club v. United States Army Corps of Eng'g*, 732 F.2d 253, 256 (2d Cir. 1984). The grant of a preliminary injunction is reviewed for abuse of discretion. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 96 (2d Cir. 2005); *S.C. Johnson & Son, Inc. v. New York State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004); *Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999) (per curiam).

**B.** **MANDATORY VERSUS PROHIBITIVE INJUNCTIVE RELIEF**

The Second Circuit classifies the typical preliminary injunction as "prohibitory" in that such an injunction generally seeks only to maintain the status quo between the parties pending a

trial of the action on the merits. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 24 (2d Cir. 1995); *Great Earth Int'l Franchising Corp. v. Milks Dev., Inc*, 302 F. Supp. 2d 248, 251 (S.D.N.Y. 2004). On the other hand, an injunction is deemed "mandatory" if it alters the status quo by commanding some positive act. *See, e.g., Christian v. Alloy, Inc.,* No. 03-CV-12058, 2004 WL 1375274, at *2 (S.D.N.Y. Jun. 17, 2004)*; M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha,* 250 F. Supp. 2d 91, 100 (E.D.N.Y. 2003); *Left Bank Co. v. Elliman-Gibbons & Ives, Inc.*, No. 99-CV-11251, 1999 WL 1114745, at *1 (S.D.N.Y. Dec. 7, 1999); *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 276 (S.D.N.Y. 1998). The threshold showing for a mandatory preliminary injunction is much higher because the movant must demonstrate a "clear" or "substantial likelihood of success" before such an injunction may be granted. *See Sunward Elecs. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004); *Tom Doherty Assocs.,* 60 F.3d at 34.

The Second Circuit has repeatedly wrestled with the status quo concept which, it agrees, is relative and variable depending upon the perspective from which it is viewed. *See Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985); *Johnson v. Kay*, 860 F.2d 529, 541 (2d Cir. 1988). As one court in this District has noted, "an injunction which orders a party to perform an action it should previously have performed may be characterized as prohibitory, since it does not change the status quo as it would have existed, absent that party's wrongful action." *Padberg v. McGrath-McKechnie*, 108 F. Supp. 2d 177, 184 (E.D.N.Y. 2000).

Plaintiff's motion seeks to have the Court enjoin the public auction of the Property pending a determination of her case on the merits. At the August 31, 2007 hearing, Plaintiff confirmed the nature of the relief she is seeking through the Order to Show Cause:

9

| THE COURT: | ... you would like me to issue the injunction and prevent the auction, correct? |
| PLAINTIFF: | I would like -- well, I would like to delay the auction until we could get a trial. |
| THE COURT: | All right. So you want a stay basically. |
| PLAINTIFF: | Yes, a stay. |
| THE COURT: | All right. |

Tr. at 25. Plaintiff is therefore looking to put off the scheduled sale of the Property by the referee at auction until her federal court action has been decided on the merits. As such, the traditional prohibitory preliminary standard applies here. To prevail on this motion, therefore, Plaintiff must demonstrate (1) irreparable harm and (2) either (a) that she is likely to succeed on the merits or (b) sufficiently serious questions regarding the merits of her claims to make them fairly litigable, with the balance of the hardships tipping decidedly in her favor. *See 1-800 Contacts, Inc.*, 414 F.3d at 406.

## IV. DISCUSSION

### A. IRREPARABLE HARM

Courts have found in certain circumstances that the loss of one's home "and the realistic prospect of homelessness constitute a threat of irreparable harm and satisfy the first prong of the test for preliminary injunctive relief." *Tellock v. Davis*, No. 02-CV-4311, 2002 WL 31433589, at *7 fn. 2 (E.D.N.Y. Oct. 31, 2002) (citing *McNeil v. New York City Housing Auth.*, 719 F. Supp. 233, 254 (S.D.N.Y. 1989)); *see also Calvagno v. Bisbal*, 430 F. Supp. 2d 95, 100 (E.D.N.Y. 2006) (holding that plaintiffs will suffer irreparable harm by losing their only residence); *In re Slater*, 200 B.R. 491, 495 (E.D.N.Y. 1996). Plaintiff stated at the August 31, 2007 hearing that

the Property subject to the partition action and sale at auction is her sole residence:

> THE COURT: Okay. Let me ask you one other question. You mentioned this is your residence. You live there now?
>
> PLAINTIFF: This is my sole residence. I have people living, who are volunteers for the institute, who are dependant upon -- they are homeless. There is no way that I can, under the present partition structure, relocate all of us anywhere....
>
> But there was never any agreement on my part to a partition auction -- just the opposite. All of our lives we've tried as hard as we could to simply get this thing sold properly and without any kind of legal action.

Tr. at 17-18. Plaintiff's claim that she will suffer "immediate and irreparable harm" is predicated upon the scheduled public sale of her property. However, Plaintiff's circumstances are distinguishable from those considered by the Court in *Tellock* and *Calvagno*. In the latter cases, plaintiffs were facing eviction from a property in which they had no ownership interest at the time of the threatened eviction. Consequently, these individuals faced the actual prospect of homelessness, without any compensation exchange which would enable them to obtain another residence. Plaintiff here, however, is guaranteed certain proceeds of the sale of the house in which the minimum bid is set at $900,000. The August 7, 2007 state court Order lowered the selling price of the Property from $1.1 million to $900,000 and directed, *inter alia*, that upon effectuation of the sale of the Property that 25% of the proceeds would be held in escrow by the Suffolk County Treasurer pending a determination of the rightful distribution of the proceeds and further directed that 75% of the proceeds from the sale be divided equally (37.5%) between Annselm and Helga Morpurgo. *See* Towner Aff., Ex. B. Those proceeds will place Plaintiff in a

position to obtain alternate housing. Such circumstances diminish the level of "irreparable harm" asserted here.

The Court is certainly cognizant of the emotional attachment to the premises which Plaintiff may have in these circumstances since the Property is the ancestral house of her parents and in which she and Defendant Helga Morpurgo grew up. It is significant to note, however, that in both her Affidavit in Support of the Order to Show Cause for preliminary injunction as well as her Complaint, Plaintiff appears to contest the minimum bid for the sale of the Property (i.e., Defendants' alleged "tortious interference with the fair market sale of my property..." Morpurgo Aff. at ¶ 3; Compl., Counts 13, 14, 17, 18) rather than the sale itself. Because there are other issues which directly impact Plaintiff's motion for a preliminary injunction, the Court will assume for the purposes of this motion that Plaintiff has demonstrated she will suffer, at least some degree of, irreparable harm absent injunctive relief.

**B.**   **LIKELIHOOD OF SUCCESS ON THE MERITS**

**1.**   **Section 1983 Conspiracy Claim**

Having satisfied the first prong of the test for preliminary injunctive relief, the Court next examines whether Plaintiff has met the test showing either (a) that she is likely to succeed on the merits or (b) sufficiently serious questions regarding the merits of the claim to make them fairly litigable, with the balance of the hardships tipping decidedly in the movant's favor. *See 1-800 Contacts, Inc.*, 414 F.3d at 406. Additionally, I note that is incumbent upon the Court to construe a *pro se* complaint broadly and interpret it to raise the strongest arguments that it suggests. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 145-146 (2d Cir. 2002); *Iwachiw v. New York City Bd. of Educ.*, No. 00-CV-2341, 2007 WL

433401, *4 (E.D.N.Y. Feb. 5, 2007). With that premise in mind, it appears from the face of the

First Amended Complaint as well as statements during the August 31, 2007 hearing that Plaintiff

is alleging the Defendants conspired to violate her civil rights under § 1983. For example,

Plaintiff contends that various officials and government entities, including the Incorporated

Village of Sag Harbor and the Sag Harbor Village Police Department,

> acting under color of law in violation of 42 U.S.C. Section 1983
> in concert and/or conspiracy with, and in sympathy with, the
> private interests of neighbors and predatory real estate developers,
> including Trustees of John Jermain Memorial Library, and
> community subscribers to John Jermain Future Fund, and by
> Plaintiff's sister Helga Morpurgo and her attorneys, Caleca &
> Towner, P.C., to violate Plaintiff's First, Fourth, Fifth and
> Fourteenth Amendment Rights and to deprive Plaintiff of all her
> civil rights and property without due process.

Compl. ¶ III(a). Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege conduct attributable to a

person acting under state law that deprived Plaintiff of a right secured by the Constitution of the

United States. *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*,

487 U.S. 42, 48 (1988)); *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993). To bring a

successful claim under § 1983, a plaintiff must show in the first instance that: "(1) the defendant

acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a

denial of his federal statutory rights, or his constitutional rights or privileges." *Rumala v. New York*

*City Transit Auth.*, 2005 WL 2076596, at *8 (citing *Mack v. Port Auth.*, 225 F. Supp. 2d 376, 382

(S.D.N.Y. 2002)). Plaintiff here seeks to hold a municipality liable under the statute. Section 1983 does not provide a cause of action on the basis of *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). A § 1983 claim is cognizable where the alleged constitutional violation resulted from either a government custom, policy, pattern or practice. *See Dean v. New York City Transit Auth.*, 297 F.Supp.2d 549, 554 (E.D.N.Y.2004) (citing *Annis v. County of Westchester*, 36 F.3d 251, 254 (2d Cir.1994)). Importantly,

> [t]he policy or custom used to anchor liability need not be contained in an explicitly adopted rule or regulation ... So long as the discriminatory practices of city officials are persistent and widespread they could be so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability.

*Sorlucco v. New York Police Dep't*, 971 F.2d 864, 870-1 (2d Cir.1991). However, "an individual official's acts can rise to the level of 'policy' when 'senior personnel' knowingly 'acquiesce' in their subordinates' behavior." *Krulick v. Bd. of Educ. of New York City*, 781 F.2d 15, 23 (2d Cir.1986) (citing *Turpin v. Mailet*, 619 F.2d 196, 203 (2d Cir.1980)). Thus, a municipal entity can be held liable only if the plaintiff "can prove that the violation was committed pursuant to a 'policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officer.'" *Rumala*, 2005 WL 2076596, at *9 (quoting *Monell*, 436 U.S. at 690).

In this Circuit, Plaintiff bears the burden of establishing as a matter of law that the conduct of a given official represents an official policy. *See Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000). The closest Plaintiff comes to alleging a municipal policy or practice is contained in the eighth paragraph under section III of the Complaint:

> [t]he instant complaint arises from a new wave of Police harassment in response to intensified community pressure widely

> reported and endorsed in the local Press from subscribers to John Jermain Future Fund who are anxious to keep the private Library from moving and from losing its funding from the School District for failure to provide requisite services therein, and who are seeking to purchase Plaintiff's property both for expansion, and for the extremely valuable Trophy historical structure that can be removed and used by them to raise funding for the privately owned Jermain Library. But these persons have never been willing and continue to be unwilling to pay a fair market price for the ten bedroom, eight-unit apartment house now occupied as a faculty residence under net lease to a rival not-for-profit foundation, The Savant Garde Institute, which is seeking to create an Art Center and rehabilitated residence for Plaintiff, Founder and Tenant in Common.

Compl. ¶ III(a). This statement implies that Defendant John Jermain Future Fund, a private entity, pressured the Sag Harbor Police Department and/or certain police officers to take actions which would ultimately enable the private library acquire Plaintiff's property to expand its own activities. Again, Plaintiff asserts that these Defendants are unwilling to pay a fair market price for the Property. Even if these allegations are true, the incidents described by Plaintiff here and throughout her Complaint do not amount to "government custom or policy" that rises to the level of a viable claim under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). It is well settled that in the context of a § 1983 claim a "plaintiff must make specific allegations of fact that indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient." *Spear v. Town of West Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (quoting *Laird v. Tatum*, 408 U.S. 1, 10 (1972)). After a careful review of the record and proceedings here, I find that Plaintiff has failed to sufficiently allege a government custom, policy, pattern or practice which violated her rights.

Turning now to Plaintiff's allegations of a purported conspiracy to violate her constitutional

rights, the Court notes that § 1985(3) prohibits "two or more persons" from "conspiring . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). Under this law, a plaintiff must allege (1) a conspiracy, (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). Significantly, the conspiracy must also be motivated by "'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Thomas*, 165 F.3d at 146 (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085 (2d Cir. 1993)). A plaintiff must also allege that the conspiracy was "aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993)

In support of her motion and in her Complaint, Plaintiff alleges a loose confederation of incidents which she claims constitute an ongoing conspiracy by the John Jermain Library and Memorial Fund, along with others, to obtain the Property below fair market value. In evaluating the likelihood of success on the merits of this claim, the Court looks to several of the events described which Plaintiff asserts constitute the "conspiracy" at the heart of her case. According to Plaintiff,

> ▸ on February 6, 2007, Patrick Milazzo of the Sag Harbor Village Police was given limited access to the first floor commercial space of Plaintiff's premises to investigate a reported theft of art work and photograph that area. P.O. Patrick Milazzo, under color of law, used his access to that limited area to report on dilapidated conditions

16

therein, violating Plaintiff's privacy rights and rights to equal protection under law. P.O. Patrick Milazzo, a relative to Donna Milazzo of the Board of Trustees of the John Jermain Memorial Library, acted in concert with or under malicious instruction from J. Doe of the Incorporated Village of Sag Harbor, and/ or J. Doe of John Jermain Future Fund, and/ or Sag Harbor Village Police Chief Thomas Fabiano; and Helga Morpurgo, and/or J. Doe as interested real estate developers. Compl. ¶ 1.

▸ Helga Morpugo and J. Doe of Sag Harbor Village Police filed false complaints, including no heat and multiple health violations, with the Health Department and the Adult Protective Service. In the next week, the investigators approached the plaintiff at home and requested access to the house to investigate conditions therein. Finding no reason to compel entry the investigators left and took no action on the complaints. Compl. ¶ 2.

▸ On or about February 9, 2007, Helga Morpurgo, and/or Officer Milazzo, and/or Village Police Chief Thomas Fabiano, and/or J. Doe of Sag Harbor Village Board of Trustees, on information and belief also acting on orders from Mayor Gregory N. Ferraris who is also President of the Board of Trustees of John Jermain Memorial Library and whose accounting firm allegedly also services John Jermain Future Fund, in gross abuse of power and on information and belief invoking The Patriot Act, caused to be elicited a letter signed by Paul Greenwood, Assistant Superintendent of the Suffolk County Water Authority's East Hampton office. .. [which] ...professed to have damaging and defamatory second-hand knowledge of numerous New York State Code violations on the premises in portions of the house to which unnamed employees had criminally trespassed. Compl. ¶ 3.

▸ Suffolk County Water Authority Legal Department's John C. Milazzo denied any knowledge of Paul Greenwood's letter ever having been seen, authorized, or sent and further that the sending of such a letter would be in

17

violation of all Company policy... Suffolk County Water Authority's Legal Department produced meter readings which disproved excessive water usage and presented no corroborating record of past Health Department violations of standing raw sewage or garbage. Compl. ¶ 4.

▸ On or about Thursday, February 15, 2007, at about 11 a.m., at 6 Union Street, Fire Marshall Timothy Platt acting on the same complaint and accompanied by the Sag Harbor Village Building Inspector Albert Daniels and the Village Police was given restricted access by plaintiff to the hallways and commercial portions of the building strictly for purposes of determining whether the residential areas of the second floor had requisite safe dual access and smoke alarms. Unable to find any standing raw sewage, household garbage, vermin, or fire code threats on the premises, Fire Marshall Timothy Platt exceeded his official authority by proceeding to cite Plaintiff with numerous inapplicable New York Code violations which do not extend to pre-existing nonconforming structures with pre-existing nonconforming commercial use within the Historic Land marked District of Sag Harbor. Further the citations given require, under Section 55-15.10 (C) ) of the Sag Harbor Zoning Code, that prior service of notice to repair be given by the Village Building Inspector upon Order from the full Sag Harbor Village Board of Trustees. Compl. ¶6.

▸ On or about Friday, February 16, 2007, at about 5 p.m., at 6 Union Street, during a period of extreme cold and freezing temperature, Fire Marshall Timothy Platt posted the entire premises as unfit for human occupancy. This posting exceeding his authority, was done wrongfully, arbitrarily, capriciously, and in conspiracy with all named defendants and violated the plaintiffs right to due process rights. Platt acted under color of law and orders from J. Doe, a Sag Harbor Village Official, and without the authority of the Board of Trustees and in behalf of private interests. Compl. ¶ 7.

▸ Further this immediate posting without adequate notice was a willful and malicious attempt to constructively evict the plaintiff, resident-owner in violation of her First, Fourth, and Fifth Amendment rights and 42 U.S.C. Section 1983 by Fire Marshal Timothy Platt acting under color of law and in alleged conspiracy with Mayor Gregory N., Ferraris, Police Chief Thomas Fabiano, P.O. Patrick Milazzo, Helga Morpurgo, and/or Andrew T. Towner, Esq. of Caleca & Towner, P.C. and J. Doe of John Jermain Future Fund and/ or other J. Doe, alleged intending purchasers including, but not limited to Michael A. Wolohojian and Peter Darrow. Compl. ¶ 8.

▸ Peter Darrow, Michael A. Wolohojian, J.Doe #2 through #N subscribing to the John Jermain Future Fund, Gregory N. Ferraris, John Jermain Memorial Library, Helga Morpugo and her attorneys Caleca & Towner, P.C. and Andrew Towner, Esq., have conspired and actively cooperated with the Sag Harbor Village Police to constructively evict and force Plaintiff to sell her residence at a fraction of its list price of $4,500,000. Compl. ¶ 13.

▸ Helga Morpugo criminally trespassed on December 26, 2006 on Plaintiff's private living quarters and committed criminal mischief, taking photographs which Helga Morpugo presented to the Supreme Court of the State of New York in a supporting affidavit before Hon. Thomas J. Whelan, J.S.C. and further shared that information with Patrick Milazzo in an effort to constructively evict Plaintiff and coerce her into selling her property for $900,000 in conspiracy with other named Defendants to deprive Plaintiff of her life, liberty and property. Compl. ¶ 15.

Plaintiff asserts that these actions violated her First, Fourth, Fifth and Fourteenth Amendment Rights and deprived her of her civil and due process rights.  It is well-settled that "in order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the

minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Webb v. Goord*, 340 F.3d 105, 110--11 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). Here, Plaintiff provides only conclusory and unsupported allegations (some asserted on information and belief) as a basis for asking the Court to find the existence of a conspiracy. The Court expressed concern over the dearth of evidence on this issue during the August 31, 2007 hearing, at which time, Plaintiff responded as follows:

> THE COURT: All right. Let me ask you a couple other questions, if you don't mind. One of the things that you have alleged in your complaint is that there is a conspiracy among the defendants, including your sister Helga Morpurgo, essentially to lower the property value. I'd like to know from you specifically what evidence you have of that at this point.
>
> PLAINTIFF: Well, I have a great deal of evidence, most of it in the press. And it has been submitted in all of the paperwork that I've put forth in the opposition to the various motions...
>
> *      *      *
>
> THE COURT: One of the things I have to look at in terms of these allegations is how much of it constitutes conclusions, for example, you've drawn compared to some actual facts or evidence that you will be able to develop. Tell me if you would, aside from the newspaper articles which I've looked at, do you have any witnesses or any documents as far as you are concerned that show evidence of this conspiracy? And I want to say specifically in terms of your sister at this point. Let me start there.
>
> PLAINTIFF: Well, let's see. It's hard to say because this is such an enormous action, and there are so many documents that I feel like I'm drowning in it. That

the Suffolk County Water Authority's scandalous
letter that was written in response to the police
request for information from them, and it was
entirely untrue. The health inspector came, he
couldn't smell any sewer, raw sewerage. There
are no broken pipes, sewer pipes or anything...

This letter was obviously false and it was elicited
in conspiracy with the police and it was as a result
of my sister's acting very stupidly and trying to get
their help in getting me out of the house.

Tr. at 20, 21-22. A copy of this February 9, 2007 letter is annexed to Plaintiff's initial Complaint

as an exhibit. *See* [DE 1 at 14]. The letter is addressed to the Sag Harbor Police Department and

is written by Paul Greenwood, Assistant Superintendent of the East Hampton Office of the Suffolk

County Water Authority, who, as the letter states, is writing at the "request" of the Sag Harbor Police

Department. *See id*. In his letter, Mr. Greenwood reports that Suffolk County Water Authority

customer service representatives entered the Property on three occasions "to read the meter and

make minor repairs." *Id*. Mr. Greenwood states that the condition of the Property is poor and

includes broken pipes, "no running water," "knee-deep" standing water in the basement with

"copious amounts of raw sewage floating in it" and garbage accumulated and stacked throughout the

residence. *See id*. The letter further states that Suffolk County Water Authority personnel also

reported an "overwhelming stench of raw sewage permeating the house." *Id*. Plaintiff seeks to have

the Court infer the existence of a conspiracy based on this letter because she disputes its contents.

I also find persuasive the argument presented by counsel for the Suffolk County Water Authority at

the August 31, 2007 hearing, as follows:

MR. FIFE:     Although we've not put papers with regard to this motion,
              primarily because the Suffolk County Water Authority

21

> really could care less as to who owns this property or what
> the division of interest with respect to the property is. But
> just very briefly, due to the fact that plaintiff has
> referenced this letter from the Suffolk County Water
> Authority today that was authored by Paul Greenwood as
> supposed evidence of a conspiracy, although the plaintiff
> may disagree with the accuracy of the letter which I think
> she has made clear today, obviously this doesn't equate to
> any evidence of a conspiracy. There's nothing alleged in
> the complaint that Suffolk County Water Authority or Mr.
> Greenwood had any connection whatsoever to the other
> defendants. The letter is what it is. It was merely a letter
> to the police in response to her request to detail what they
> saw on visits to check the water meter.

Tr. at 40-41. Standing alone, the information proffered here by Plaintiff does not equate to a conspiracy and Plaintiff has presented no other evidence to support such a theory. It should be noted that newspaper articles are not evidence. Further, allegations that Defendant Helga Morpurgo would conspire to lower the market value of a parcel of real property in which she holds a 37.5% interest are neither logical nor reasonable.[8]

The allegations of a conspiracy as presented by Plaintiff are far too vague and conclusory to qualify for the drastic remedy of injunctive relief. The Second Circuit has repeatedly held that such conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights are insufficient – even on the more lenient standard used to decide a motion to dismiss. *See Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999); *see also Sommer v. Dixon*, 709 F.2d 173, 175

---

[8]     It should be noted that many of the individually named Defendants in this lawsuit are not "state actors" for the purpose of § 1983 and thus, they cannot be held liable on that basis. *See, e.g., Polk County v. Dodson*, 454 U.S. 312, 318 (1981) (a lawyer is generally not considered to be "a state actor 'under color of state law' within the meaning of § 1983); *see also Cammer v. United States*, 350 U.S. 399, 405 (1956); *Brooks v. New York State Supreme Court, Appellate Div. First Dept.*, No. 02-CV-4183, 2002 WL 31528632, at *1 (E.D.N.Y. Aug. 16, 2002).

(2d Cir. 1983). Here, Plaintiff has not alleged or demonstrated any evidence that there was a "meeting of the minds" among any of the Defendants. She does not state what is encompassed by § 1985 as "conspiratorial" actions by any Defendant or allege how the Defendants acted in concert with one another. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). Although Plaintiff randomly speaks of purported interrelationships of the alleged co-conspirators, she has done so by way of freewheeling and speculative allegations which fail to raise a reasonable inference of a conspiracy. *See Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir. 1975); *Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972); *Powell v. Workmen's Comp. Bd.*, 327 F.2d 131, 137 (2d Cir. 1964). Plaintiff's conclusory allegations do not suffice to state a § 1983 action as to either the Village or Individual Defendants. *See Zemsky v. City of New York*, 821 F.2d 148, 151-52 (2d Cir.), *cert. denied*, 484 U.S. 965 (1987).

To state a claim against a private entity based upon § 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act. *See Spear*, 954 F.2d at 68. "In the final analysis the question is whether 'the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State.'" *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 199 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)); *see also Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 n.12 (2d Cir.1984) ("[P]rivate litigants engaged in a conspiracy with state officials to violate the Fourteenth Amendment are amenable to a cause of action under § 1983 – whether as state actors by virtue of conspiratorial conduct with state officials, or as private actors who, acting in conspiratorial

concert with state actors, thereby act under color of law."), *reaff'd*, 758 F.2d 46 (2d Cir. 1985), *cert. dismissed*, 479 U.S. 84 (1986).

Accordingly, I find that Plaintiff has not established either (a) a likelihood of success on the merits or (b) sufficiently serious questions regarding the merits of the claim to make them fairly litigable, with the balance of the hardships tipping decidedly in the movant's favor. *See 1-800 Contacts, Inc.*, 414 F.3d at 406. On that basis, Plaintiff has failed to establish her entitlement to a preliminary injunction.

### 2. The State Action

The Court is mindful that many of the incidents complained of here by Plaintiff are already being litigated in the Supreme Court, Suffolk County. It is precisely Plaintiff's desire to halt the public auction directed by the Supreme Court in the State Action that has prompted the instant Order to Show Cause and motion for preliminary injunctive relief. Plaintiff's application for emergency relief here thus raises the issue of this Court's jurisdiction to grant such relief.

Under *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, federal courts must "abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236-37 (1984). As the Second Circuit has held "*Younger* is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in the equitable considerations of comity." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003), *cert. denied*, 541 U.S. 1085 (2004). The balance between federalism and comity, as reflected in the *Younger* doctrine, generally requires federal courts to abstain from

"taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond D Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *Hindu Temple Soc'y of North America v. Supreme Court of the State of New York*, 335 F. Supp. 2d 369, 372 (E.D.N.Y. 2004). As the Supreme Court has observed,

> [t]he notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Younger*, 401 U.S. at 44. Central to *Younger* was the recognition that ours is a system in which "the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *See Huffman v. Pursue*, 420 U.S. 592, 601 (1975). The Supreme Court has extended the applicability of *Younger* to civil cases. *See Huffman*, 420 U.S. at 604 (1975). Notably, the Supreme Court and numerous courts in this Circuit have explicitly held that the doctrine of abstention remains relevant when deciding whether to entertain a request for injunctive relief pursuant to § 1983. *See, e.g., Mitchum v. Foster*, 407 U.S. 225, 243 (1972); *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1147 (2d Cir. 1986); *Citizens for Better Env't, Inc. v. Nassau County*, 488 F.2d 1353, 1359 (2d Cir. 1973); *Phifer v. City of New York*, No. 99-CV-4422, 1999 WL 722013, at *2 (S.D.N.Y. Sept. 16, 1999).

Abstention is the exception, not the rule, and is appropriate in only three relatively well-defined circumstances. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1985); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, *rehearing*

25

*denied*, 426 U.S. 912 (1976). For the *Younger* doctrine to apply, three conditions must be present: (1) "important," "substantial" or "vital" state interests must be at stake; (2) state procedures must be available to provide an adequate opportunity for the plaintiff to raise his claims in a state court; and (3) there must be an ongoing state proceeding. *See Middlesex Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Moore v. Sims*, 442 U.S. 415, 423-25 (1979); *Texaco Inc.*, 784 F.2d at 1149.

Courts have declined to hear a wide range of issues under the doctrine of abstention. *See, e.g., Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12-13 (contempt proceeding); *Anonymous v. Ass'n of the Bar of the City of New York*, 515 F.2d 427, 435 (2d Cir. 1975) (attorney discipline); *Phifer*, 1999 WL 722013, at *1 (child custody dispute); *Hernandez v. New York City Law Dep't*, No. 94-CV-9042, 1996 WL 26617, at *1 (S.D.N.Y. Jan. 23, 1996) (adoption proceedings); *Brooks*, 2002 WL 31528632, at *1 (attorney discipline). In *Vitranschart, Inc. v. Levy*, No. 00-CV-3618, 2000 WL 1239081, at *1 (S.D.N.Y. Aug. 31, 2000) the court held that the principles of the *Younger* doctrine applied and abstention was warranted because the ongoing state proceeding "implicates the important state interests in administering its own judicial system" and involved the "conduct of corporate fiduciaries." *Id.* at *8; *see also*, *Pennzoil*, 481 U.S. at 12-14 (State interest in regulating judicial procedures); *Middlesex County Ethics Comm.*, 457 U.S. 423, 432 (1982) (State interest in functioning of judicial system); *Davidson v. Garry*, 956 F. Supp. 265, 269 (E.D.N.Y. 1996) ("it is beyond debate that New York State has an important interest in the accurate and bias-free functioning of its judicial system"). Similarly, I find here that "important" state interests are involved, namely, the ability of the state court to adjudicate the real property rights of common

26

tenants in, *inter alia*, partition actions. Further, the fact that a mechanism for the partition of real property is codified in N.Y. Real Prop. Act. & Proceedings Law § 901(1) demonstrates that it is in an important state interest under New York law – exactly the type which should be respected and protected under the notions of comity and federalism as stated by the Supreme Court in *Younger*. *See Younger*, 401 U.S. at 44.

Further, I find that Plaintiff had adequate opportunity and ability to raise her present claims in state court. It is well settled that state courts are competent to hear certain federal claims. *See Pennzoil*, 481 U.S. at 15; *Simmonds v. Deutsch*, No. 88-CV-3881, 1989 WL 32835, at * 10 (E.D.N.Y. Mar. 27, 1989). Specifically, § 1983 claims may be raised in state courts. *See Maine v. Thiboutout*, 448 U.S. 1, 10-11 (1980); *Robinson v. Cusack*, No. 05-CV-5318, 2007 WL 2028112, at *7 (E.D.N.Y. July 11, 2007); *Davidson*, 956 F. Supp. at 269 fn. 3. In *Reinhardt v. Commonwealth of Massachusetts Dep't of Soc. Serv.*, 715 F. Supp. 1253 (S.D.N.Y. 1989), the court held that *Younger* abstention applied to plaintiff's § 1983 claims and that the "plaintiff's decision to forgo his state remedies in the first instance does not permit this court to disregard its responsibility to preserve motions of comity and federalism." *Id.* at 1258. Portions of the August 31, 2007 hearing transcript demonstrate that Plaintiff seeks to do the very same thing here:

> THE COURT:  Well, since this was an order to conduct a sale in the state court why did you not go back to the state court to seek the injunction there?
>
> PLAINTIFF:  I don't feel that I could get anything in the state court. I believe there is something really wrong going on over there....

27

> There's a lot of political pressure. I am opposing some very, very strong people and a lot of money that is involved in Sag Harbor and the library and my next door neighbors. And my feeling is that I can only get a proper hearing in the district court.

Tr. at 18-19. Plaintiff explained that she filed notices of appeal to several of the state court's orders. *Id.* at 10. In each instance however, Plaintiff's *in forma pauperis* application was denied and Plaintiff states that she could not "afford to pursue any of those appeals in the state court" and they were consequently "withdrawn without prejudice by the state court." *Id.* at 10-11. Plaintiff further states that she attempted to assert counterclaims and cross-claims in the State Action, but "they were dismissed on a technicality" and she could not afford to pursue the appeal. She subsequently withdrew her appeal. *Id.* at 14-15.

> PLAINTIFF: Because the pauperis application was accepted by the federal court and I believe that the appeals, all the orders interlocutory appeals can probably be reconstituted here at the appellate division level of the Court as well, or else maybe even -- the matter has not gone to trial.
>
> No issue has gone to trial in the state court and I do believe it can be removed now to federal court because the issues that have to be decided are constitutional, therefore why not have it all finally fought out here in the district court, and that is the substance of what my reply was.
>
> THE COURT: I think you are referring specifically to the 1983 aspect, the civil rights aspect of your case is; is that correct?

PLAINTIFF: It's not just the civil rights aspect but the fact that there is a foundation involved and that the state court first declared it did not exist and then decided that the matter was to be put up for trial. The state court first agreed that this was only a question of a partition between me and my sister where I had 62.5 percent of the property and she had only 37.5 percent of the property and that the issue between me and the institute was entirely between me and the institute and that was what was agreed to by Judge Underwood who recommended that. And then for some reason after Judge Underwood decided to retire or perhaps even recuse himself, Judge Whalen got the matter all mixed up and has decided now that the institute is a party, whereas, the institute has never been a party in that action, but it does have a right to become a party, especially in federal court.

*Id.* at 11-12.

A review of the October 15, 2004 and August 7, 2007 Orders in the State Action show that Plaintiff had an opportunity to raise certain issues. For example, in the August 7, 2007 Order, the court held that "[w]hile the defendant [Annselm Morpurgo] opposes the application by plaintiff, she does not offer any meaningful dissenting dialogue to dissuade the Court from granting the plaintiff's requested affirmative relief." *See* Towner Aff., Ex. B.

Based on the foregoing, there is no indication that Plaintiff's constitutional claims were barred from being considered in the State Action. Rather, Plaintiff was apparently dissatisfied or mistrustful of the treatment and resolution of those claims. This basis is insufficient to avoid *Younger* abstention. This Court has held, in similar circumstances, that the type of claims raised

here is precisely the type that should have been raised by way of appeal through the state court – rather than by means of a parallel, contemporaneous attack in federal court. *See Hindu Temple Soc'y of North America*, 335 F. Supp. 2d at 374; *see also Reinhardt*, 715 F. Supp. at 1258 ("plaintiff's decision to forgo his state remedies in the first instance does not permit this court to disregard its responsibility to preserve notions of comity and federalism"). Plaintiff's having been denied *in forma pauperis* status in the state appellate courts does not supercede that principle.

The final condition warranting applicability of the *Younger* abstention doctrine is met here since there remains an ongoing state proceeding. *See Middlesex Ethics Comm.*, 457 U.S. at 432. The August 7, 2007 Order in the State Action, granting Helga Morpurgo's motion for summary judgment seeking partition, was interlocutory in nature. The state court retained jurisdiction over certain aspects of the case, including, *inter alia*, the rightful distribution of 25% of the net proceeds of the sale of the Property. *See* Towner Aff., Ex. B. A state action is considered "pending" for *Younger* purposes through the completion of the state appeals process, even if the federal plaintiff has failed to exercise his state appellate rights. *Huffman*, 420 U.S. at 608 ("a necessary concomitant of *Younger* is that a party ... must exhaust his state appellate remedies before seeking relief in the District Court"). Thus, while the exhaustion of state judicial remedies generally is not required in § 1983 actions, the *Younger* doctrine effectively interposes such a requirement "when a state proceeding is pending against the federal plaintiff prior to [his] initiation of suit in federal court." *Donkor v. City of New York Human Res. Admin.*, 673 F. Supp. 1221, 1225 (S.D.N.Y.1987).

It is well settled that a federal court should not abstain if it finds that the state court proceeding is being pursued in bad faith or with the purpose of harassing the federal plaintiff or in flagrant violation of express constitutional provisions. *See Younger*, 401 U.S. at 49; *Huffman*, 420 U.S. at 611; *Moore v. Sims*, 442 U.S. 415, 424 (1979); *Choi v. Kim*, No. 96-CV-2086, 1997 WL 722708, at *5 (E.D.N.Y. Sept. 25, 1997). No evidence of such bad faith has been presented by Plaintiff here. A final exception to *Younger* exists when other "extraordinary circumstances" can be shown even in the absence of the usual prerequisites of bad faith and harassment." *Reinhardt*, 715 F. Supp. at 1258 (quoting *Younger*, 401 U.S. at 53); *see Chin*, 1999 WL 722013, at *2. As the Supreme Court held in *Huffman*,

> interference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies. Such interference also results in duplicative legal proceedings, and can readily be interpreted 'as reflecting negatively upon the state court's ability to enforce constitutional principles.'

*Huffman*, 420 U.S. at 601. In applying the conditions set forth in *Younger*, I conclude that this case requires abstention and that none of the enumerated exceptions applies. Plaintiff has offered no evidence that the state court proceedings were pursued in bad faith or for harassment purposes. Additionally, I find that no extraordinary circumstances as the applicable case law defines such circumstances have been presented here which would warrant granting the injunctive relief sought here.

## V.   BALANCING OF THE EQUITIES

The statutory right of partition is not absolute and may be precluded by the equities presented in a given case.  *See* N.Y. Real Property Actions & Proceedings Law § 901; *Ferguson v. McLoughlin*, 584 N.Y.S.2d 816, 817 (App. Div. 1992).  Indeed, its October 15, 2004 Order, the state court granted partition of the Property and noted that "while partition is not an absolute right and may be precluded by the equities presented in a given case, the defendants' contentions to bar partition are totally without merit and there is no 'great prejudice' to warrant denial."  *See* Towner Aff., Ex. A.  The state court's determination of the equities presented here should not be disturbed.

## VI.   CONCLUSION

Although the Plaintiff has demonstrated irreparable harm, this is not the type of harm that the federal court can or should properly redress based upon the particular facts and applicable law presented here.  Nor has Plaintiff met her burden of establishing a likelihood of success on the merits of her case.  Therefore, it is my recommendation to District Judge Seybert that Plaintiff's motion for a preliminary injunction be **DENIED**.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 10 days of service and failure to file objections within this period waives the right to appeal.  *See* 28 U.S.C. § 636(b)(1)(c) (2006); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).  Therefore, the parties are directed to file any written objections to this Report and Recommendation with Judge Seybert not later than 10 days from the date of this Order.

A copy of this Report and Recommendation is being faxed to Plaintiff *Pro Se* by the

Court.


**SO ORDERED.**

Dated:   Central Islip, New York
           October 11, 2007

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge
