UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANSELM MORPURGO,

          *Pro Se* Plaintiff,

          - against -

THE INCORPORATED VILLAGE OF SAG HARBOR
and Gregory N. Ferraris as appointed Mayor,
Edward Deyermond as retiring elected Mayor, and
J. Doe #1 through #N of the elected or acting Board of Trustees,

SAG HARBOR VILLAGE POLICE, and
Thomas Fabiano as Police Chief and Police Officer Patrick Milazzo,

SAG HARBOR VILLAGE BUILDINGS
DEPARTMENT, and Timothy Platt as Fire Marshal/
Code Enforcer and Building Inspector Albert Daniels as material witness,

SUFFOLK COUNTY WATER AUTHORITY,
and Paul Greenwood as Assistant Superintendent,

CALECA & TOWNER, P.C., and Andrew T. Towner, Esq.,

JOHN JERMAIN MEMORIAL LIBRARY,
Gregory N. Ferraris as President of the Board of Trustees,
and J. Doe #1 through #N of the appointed or elected Board of Trustees,

JOHN JERMAIN FUTURE FUND,
Gail Slevin and Gregory N. Ferraris, CPA, LLC,
Contacts, and J. Doe #1 through #N as subscribers,

GREGORY N. FERRARIS, THOMAS FABIANO,
PATRICK MILAZZO, TIMOTHY PLATT,
PAUL GREENWOOD, CHRISTINE STANLEY a/k/a
HELGA MORPURGO, ANDREW T. TOWNER, ESQ.,
MICHAEL A. WOLOHOJIAN, PETER DARROW, and
other persons J. DOE #1 through #N as other
conspiring individuals upon Discovery,

          Defendants.
------------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

CV 07-1149 (JS) (AKT)

A. KATHLEEN TOMLINSON, Magistrate Judge:

I.    **PRELIMINARY STATEMENT**

Before the Court are various Defendants' motions to dismiss which have been referred to me by Judge Seybert for a Report and Recommendation.  The Motions to Dismiss and this case as a whole are set against the backdrop of a related state court action, *Helga Morpurgo a/k/a Christine Stanley v. Annselm Morpurgo, a/k/a Anna Selma Vinjie Morpurgo, individually and d/b/a Sag Habor Art Center, Sag Habor Savings Bank, Household Finance Corp., Discovery Bank and John C. Cochrane as the Treasurer of Suffolk County*, Index No. 2003-5554 (N.Y. Supreme Ct., Suffolk County) (the "State Action").  Both the State Action and the instant case concern the respective rights of two sisters, Helga Morpurgo and Plaintiff Anselm Morpurgo, to a certain property located at 6 Union Street, Sag Harbor, New York (the "Property"), which Plaintiff alleges is her sole residence.  Am. Compl. at 3.

In the Amended Complaint [DE 4] filed in this action, Plaintiff alleges violations of her constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1985 by the following Defendants:  The Incorporated Village of Sag Harbor; Sag Harbor Village Police; Sag Harbor Village Buildings Department; J.Doe #1 through #N of the elcted or acting Board of Trustees; Suffolk County Water Authority ("SCWA"); Caleca & Towner, P.C.; John Jermain Memorial Library ; John Jermain Future Fund; Gail Slevin; J. Doe #1 through #N as subscribers to the Fund; Christine Stanley (a.k.a. Helga Morpurgo); Michael A. Wolohjian; Peter Darrow; Andrew Towner, Esq.; and Albert Daniels (as material witness).  Plaintiff also sues the following individuals in their official and individual capacities:  Gregory N. Ferraris (as appointed Mayor of the Village, President of the Library Board of Trustees, and Gregory N. Ferraris, CPA, LLC as "Contact" of

the Fund); Thomas Fabiano (Police Chief); Patrick Milazzo (Police Officer); Timothy Platt (Fire Marshal/Code Enforcer); Paul Greenwood (as Assistant Superintendent of the SCWA); and Ed Deyermond (as retiring elected Mayor of the Village).

Based upon the documentary evidence, written submissions and the applicable case law, I respectfully recommend that the respective Defendants' motions to dismiss be GRANTED.

## II.  BACKGROUND

### A.  Factual Background

The following facts are taken from the Amended Complaint and are not findings of fact by the Court.  Rather, they are assumed to be true for purposes of deciding these motions and are construed in the light most favorable to Plaintiff, the non-moving party.  *See LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).  Because Plaintiff is proceeding *pro se*, the Court construes the Amended Complaint broadly and interprets it to raise the strongest arguments that it suggests.  *See Huges v. Rowe*, 449 U.S. 5, 9 (1980); *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 145-46 (2d Cir. 2002).

According to Plaintiff, this case arises out of "actions committed by Officials of The Incorporated Village of Sag Harbor, and the Sag Harbor Village Police and other persons acting under color of law in violation of 42 U.S.C. Section 1983 in concert and/or conspiracy with, and in sympathy with, the private interests of neighbors and predatory real estate developers," including Trustees of the John Jermain Memorial Library and subscribers to the John Jermain Memorial Fund, and by Plaintiff's sister, Defendant Helga Morpurgo and her attorneys, Caleca & Towner, "to violate Plaintiff's First, Fourth, Fifth and Fourteenth Amended Rights and to deprive Plaintiff of all her civil rights and property without due process."  Am. Coml. at 3.  In sum,

3

Plaintiff alleges that the Defendants are conspiring to force her out of her home so that the Property can be used for the not-for-profit entity which is currently located next door.

### 1. *The Property And The Savant Garde Institute*

Plaintiff is the landlord of and resides on the Property, which is a ten bedroom, eight-unit apartment house. *Id.* at 4, 10. The Property is "landmarkable, though still unlandmarked" and has been identified "as an authentic Federalist Italianate post-and-beam 10-bedroom townhouse or lodge built circa 1770." *Id.* at 10. Plaintiff believes that "[b]ecause of its fundraising value at a Charities Auction as a Trophy Collectible . . . it's Trophy value may be in the high multimillions. . . . ." *Id.* Plaintiff identifies herself as a "celebrity owner and professional in the arts and sciences" (*id.*), as well as the "Founder and Manager" of a not-for-profit educational foundation, The Savant Garde Institute, which maintains offices on the Property. *Id.* at 3-4. The Property also serves as a "faculty residence under net lease" for the Savant Garde Institute. *Id.* The Savant Garde Institute "is attempting to raise funds to create a Cultural Center on the property that would also benefit the Library next door." *Id.* at 4. Alternatively, Plaintiff states that the Savant Garde Institute "is seeking to create an Art Center and rehabilitated residence for Plaintiff, Founder and Tenant in Common." *Id.*

### 2. *The Library And The Fund*

The John Jermain Memorial Library ("Library"), which is supported by the John Jermain Future Fund ("Fund"), is located on property adjacent to Plaintiff's Property (*id.* at 3), and is a "rival not-for-profit foundation" with the Savant Garde Institute (*id.* at 4), according to Plaintiff. Plaintiff alleges that members of the Library's Board of Trustees and subscribers to the Fund, as well as residents of Sag Harbor, are conspiring with the other Defendants to force Plaintiff to sell

her Property at a price below the fair market value so that the Library may be expanded onto the Property.  *Id*. at 3-4, 7-8.

### 3.    *Investigations And Citations Of The Property*

On or about February 6, 2007, Police Officer Milazzo "was given limited access to the first floor commercial space" of [the Property] to investigate a reported theft . . . and was permitted to photograph that limited area."  *Id*. at 4.  Thereafter, Office Milazzo "used information supplied by Helga Morpurgo . . . to file false complaints with the Health Department and the Adult Protective Services," including that the Property had "no heat and multiple house violations."  *Id*. at 5.  Based upon these allegedly false complaints, "investigators [came] to Plaintiff's door requesting access to the house to investigate conditions therein. . . ."  *Id*. According to Plaintiff, investigators from the Health Department and the Adult Protective Services, on frequent repeated visits, found "no stench or standing garbage or other reason to compel entry. . . ."  *Id*.

The next day, Officer Milazzo "with Helga Morpurgo and/or her Attorney Andrew T. Towner, Esq., and/or Village Police Chief Thomas Fabiano and/or J.Doe of Sag Harbor Village Board of Trustees . . . also acting on orders from Mayor Gregory N. Ferraris . . . caused to be elicited a letter signed by Paul Greenwood, Assistant Superintendent of the Suffolk County Water Authority's East Hampton Office, which professed having damaging and defamatory second-hand knowledge of numerous New York State Code violations on the premises in portions of the house to which unnamed employees allegedly had criminally trespassed to facilitate issue of a warrant to search the promises for illegal occupants[,]" (the "Greenwood Letter").  *Id*.  Following receipt of the Greenwood Letter, either Officer Milazzo or another

unnamed Police officer and/or an unnamed member of the Village Board "pressed the . . . Buildings Department and Code Enforcement Fire Marshall to demand immediate access to Plaintiff's home, which Plaintiff denied, wherefore they went away seeking a warrant to enter the premises." *Id.* at 6.

Fire Marshall Platt, on February 15, 2007 in the presence of Sag Harbor Village Building Inspector Albert Daniel and accompanied by Village Police, presented Plaintiff with a warrant to inspect "the hallways and commercial portions of the building strictly for the purposes of determining whether the residential areas on the second floor had requisite safe dual access and smoke alarms." *Id.* However, according to Plaintiff, Platt "proceeded to inspect all areas of the house except the second-floor residential area, knowing full well the house was closed and empty of tenants for winter except for the Owner/Caretaker's quarters." *Id.* Following this inspection, Fire Marshal Platt "cite[d] Plaintiff with numerous New York Code violations in the closed and uninhabited and commercial areas of the house that are not normally cited against seniors residing in grandfathered apartment houses known to be empty of commercial tenants with the Historical Landmarked District of Sag Harbor. . . ." *Id.* Then, on or about February 16, 2007, Fire Marshal Platt "posted the entire premises as unfit for human occupancy." *Id.* at 7.

### 4.    *Photographs Taken By Helga Morpurgo*

In and around December 26, 2006 (almost two months prior to Officer Milazzo's inspection described above), Plaintiff claims that Defendant Helga Morpurgo impermissibly entered Plaintiff's private living quarters, at a time when Helga knew Plaintiff would not be at home, and took staged photographs, which she later presented to Police Officer Milazzo. *Id.* at 9. Helga Morpurgo also presented these photographs to the court in the State Action "in a

distorted supporting affidavit to a renewed Partition Action . . . and further shared this same information with P.O. Patrick Milazzo of Sag Harbor Village Police . . . ." *Id.* Subsequently, on February 26, 2007, Helga's attorney in the State Action, Andrew Towner of Caleca & Towner, included the same affidavit and photographs in another motion in the State Action "to renew an action for Partition at a reduced minimum price of $900,000 so as to intimidate Plaintiff in to an immediate sale" to Wolohojian and Darrow or Harmon Levine and Peter Darrow. *Id.*

### 5.    *Efforts To Force Or Intimidate Plaintiff To Sell The Property*

Plaintiff alleges that, at the time of the Amended Complaint, the "present realtor listed asking price" of the Property was $4.5 million. *Id.* at 9. However, according to Plaintiff, following Fire Marshal Platt's posting the Property as "unfit for human occupancy," several Defendants, including Helga Morpurgo and her attorneys, conspired with the Police Department and with "private real estate interests . . . to constructively evict and force Plaintiff to sell her residence at a fraction" of its listed price. *Id.* at 8-9. Specifically, Plaintiff contends that these parties are demanding that she sell the Property to Wolohojian for $900,000 or that she agree to sign a reduced-contingency contract with Harmon Levine for $1.1 million. Plaintiff asserts that the offers from both Wolohojian and Levine include "the sub-contractural interests of adjoining neighbor Peter Darrow, an alleged founding contributor to [the Fund], an alleged corrupt organization." *Id.* at 9.

Plaintiff further alleges that unnamed members of the Sag Harbor Village Architectural Preservation Board (not named as a Defendant) and the Library "have conspired through the years to suppress knowledge, in their care and possession, of the true history of Plaintiff's house, for the purpose of discouraging both Plaintiff and State and National Architectural Preservation

Offices from properly identifying and producing funds to preserve or restore the site and structure as being a place of National Historical Interest." *Id*. at 10. This suppression of information also serves to "favor a below-market sale to [the Library] prior to revealing its true worth for the Library's own fundraising purposes." *Id*.

## B. Procedural History

Plaintiff filed the Amended Complaint [DE 4] on April 3, 2007, alleging that Defendants engaged in a conspiracy "to deprive Plaintiff of her First, Fourth, Fifth and Fourteenth Amendment rights to dispose of her property as she chooses and at fair market [value]. . . . " Am. Compl. at 11. By Order dated May 2, 2007 [DE 5], Plaintiff was granted leave to proceed *in forma pauperis* and the United States Marshal Service was directed to "serve the complaint upon defendant without prepayment of fees." *See* DE 5. The Summons and Amended Complaint and Notice and Acknowledgment of Receipt and Summons and Complaint by Mail (the "Notice and Acknowledgment") were sent to Defendants via first class mail. Thereafter, each Defendant completed and returned the Notice and Acknowledgment to the Marshal Service. *See* DE 12-15, 17-26, 36-37, 49-50, 60.

Several Defendants filed motions to dismiss. Before such motions to dismiss were decided, Plaintiff moved by Order to Show Cause seeking a preliminary injunction [DE 46] enjoining the public sale of the Property (at an auction to be held by the state court-appointed referee) until a final disposition of the federal litigation on the merits. In the Report and Recommendation dated October 11, 2007 [DE 64], this Court recommended that Plaintiff's motion for preliminary injunction be denied because although Plaintiff had demonstrated irreparable harm, Plaintiff had not established a likelihood of success on the merits of her case.

8

This Court further recommended that, under the *Younger* abstention doctrine, the harm shown by Plaintiff was not the type of harm that the federal court could or should properly address under the circumstances presented. *See* DE 64. By Order dated November 8, 2007 [DE 71], Judge Seybert adopted the Report and Recommendation to the extent that it recommended that the Court refrain from exercising its jurisdiction pursuant to the *Younger* doctrine in light of the ongoing State Action. The Court did not reach the merits of Plaintiff's motion for a preliminary injunction. The Judgment, which stated that "Pltff Anselm Morpurgo take nothing of the Dfts; and that the Court declines to exercise jurisdiction over this action[,]" was entered on the same date. The action was marked closed and all pending motions were terminated. *See* DE 71, 72.

On November 28, 2007, Plaintiff filed a Notice of Appeal as to the Judgment. *See* DE 73. By Summary Order dated May 15, 2009, the Second Circuit affirmed with respect to Plaintiff's claims for injunctive relief, but vacated and remanded with respect to Plaintiff's claims for monetary damages, on the grounds that "application of the *Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983. . . ." *See* DE 77 (citation omitted). The Second Circuit also stated that it "intimate[d] no view on the merits of these claims." *Id*.

Currently pending before the Court are six motions to dismiss referred by Judge Seybert. These motions are brought by (1) the Village, the Police Department, the Buildings Department, Gregory N. Ferraris, Thomas Fabiano and Patrick Milazzo (collectively, the "Sag Harbor Defendants") [DE 10]; (2) Caleca & Towner, P.C. and Andrew Towner, Esq. [DE 27]; (3) the John Jermain Future Fund and Gail Slevin [DE 30]; (4) the SCWA and Paul Greenwood [DE 33]; (5) Christine Stanley [DE 39]; and (6) Peter Darrow [DE 56].

### C. Plaintiff's Claims

Plaintiff brings two causes of action in the Amended Complaint. In the first cause of action, Plaintiff alleges that "[a]ll of the above-named Defendants, and J. Doe #1 through #N later to be named, who are elected or appointed Officials of Incorporated Village of Sag Harbor and Sag Harbor Village Police

> have repeatedly engaged in rogue abuse of discretion and selective enforcement, done under color of law, either voluntarily and in concert and/or conspiracy, to facilitate an extensive overt community conspiracy to deprive Plaintiff of her First, Fourth, Fifth and Fourteenth Amended rights to dispose of her property as she chooses and at fair market, in violation of 42 U.S.C. Section 1983, acting under color of law to favor and further private interests of next door neighbors John Jermain Memorial Library and Peter Darrow.

Am. Compl. at 11. Thus, in the first cause of action, Plaintiff contends that Defendants conspired to violate and actually violated her constitutional right to dispose of her property in the manner of her choosing and for the market price.[1]

In the second cause of action, which is brought against "[a]ll of the above-named individual Defendants and J. Doe #1 through #N later to be named," Plaintiff alleges that such Defendants

> have engaged in an overt, extensive and predatory community conspiracy to deprive Plaintiff of her First, Fourth, Fifth and Fourteenth Amended rights to dispose of her property as she chooses and at fair market, and of all her civil rights as an impoverished senior standing alone against an organized, predatory and criminal faction of a closely-knit community, and further in overt or covert conspiracy with elected or appointed corrupt Officials of Incorporated Village of Sag Harbor and/or with Sag Harbor Village Police, acting under color

---

[1]    Although the Court is uncertain whether Plaintiff intends to bring this first cause of action against all Defendants or only the Sag Harbor Defendants, in the abundance of caution, the Court will analyze the sufficiency of the claim as against all of the named Defendants in this action.

of law, and/or with members of the Board of Trustees of John Jermain Memorial Library, and/or with next-door neighbor Peter Darrow, and/or with intending purchaser Michael A. Wolohojian and/or with J. Doe #1 through #N as subscribers to John Jermain Future Fund.

*Id.* Although Plaintiff does not specifically cite Section 1985, the Court construes this cause of action as alleging violations of Section 1985(3) because the bulk of the assertions pertain to a purported conspiracy by the individual Defendants.[2] The Court interprets this Second Cause of Action as alleging that the individual Defendants conspired with the Village Defendants, the Library, the Fund, and potential purchasers Darrow and Wolohojian to violate Plaintiff's civil rights as an "impoverished senior citizen," and to violate Plaintiff's constitutional rights by precluding her from disposing of her property in the manner of her choosing and for fair market value.

## III. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563,

---

[2] The Second Cause of Action cannot be read as a claim under either Section 1985(1) or 1985(2) because Plaintiff does not assert duties under the United States, and does not contend that she was deterred by force, intimidation, or threat from attending or testifying to any matter in federal court, as required by these provisions.

127 S. Ct. 1955 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), setting forth a two-pronged approach for courts deciding a motion to dismiss. District courts are to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads  factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In reviewing a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process, the Court must determine whether the failure to properly effect service was excused due to good cause and, if not, whether the cause of action should be dismissed. *See Morales v. New York State Dep't of Labor Div. of Employee Servs.*, 06-cv-899, 2007 U.S. Dist. LEXIS 72172, at *8 (N.D.N.Y. Sept. 27, 2007). Generally, a *pro se* litigant proceeding *in forma pauperis* is entitled to rely upon the U.S. Marshals to effect service. *See* Fed. R. Civ. P. 4(c)(3); *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986). The Second Circuit has stated that a

plaintiff's *in forma pauperis* status "shift[s] the responsibility for serving the complaint from [the plaintiff] to the court." *Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996); *see also Kavazanjian v. Rice*, No. 03-CV-1923, 2005 WL 1377946, at *2 (E.D.N.Y. Jun. 6, 2005) (holding that "[f]or plaintiffs proceeding *in forma pauperis* . . . the Marshal's Office – not the plaintiff – is primarily responsible for effecting service.") (citing 28 U.S.C. § 1915(a) ("The officers of the court shall issue and serve all process and perform all duties in [*in forma pauperis*] cases.")).  Where a *pro se* litigant is proceeding *in forma pauperis* and Defendant was not properly served, the Court typically considers whether Defendant had actual notice of the lawsuit and whether Defendant was prejudiced by the U.S. Marshal's failure to effect proper service.  *See Morales*, 2007 U.S. Dist. LEXIS 72172, at *13 (holding that "good cause" existed for plaintiff's failure to properly effect service where, *inter alia*, Defendant "had actual notice of [the] complaint well within the 120 day service period, and therefore was not prejudiced by the failure to effect proper service").

In addition, where, as here, a plaintiff is proceeding *pro* se, the pleadings must be considered under a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Bellamy v. Mt. Vernon Hosp.*, 07 Civ. 1801, 2009 WL 1835939, at *3 (S.D.N.Y. Jun. 26, 2009) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  The pleadings must be "interpreted to raise the strongest arguments they suggest." *Bellamy*, 2009 WL 1835939, at *3 (quoting *Burgos v. Hopkins*, 14 F.2d 797, 790 (2d Cir. 1994)).  However, "[c]laims alleging conspiracy to violate civil rights are held to a heightened pleading standard." *Brewster v. Nassau Cty.*, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004) (addressing Section 1983 claims brought by *pro se* plaintiff) (citing *Julian v. New York City Transit Auth.*, 857 F. Sup. 242, 252 (E.D.N.Y. 1994)).  "The Second Circuit has explained that these claims are so easily made and can

precipitate such protracted proceedings with such disruption of governmental functions that detailed fact pleading is required to withstand a motion to dismiss them." *Brewster*, 349 F. Supp. 2d at 548 (quoting *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981)) (internal quotations omitted). Moreover, "a[] complaint containing only conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon*, 709 F.2d 183, 175 (2d Cir. 1983).

## IV. DISCUSSION

The Court construes Pro Se Plaintiff's Amended Complaint broadly and interprets it to raise the strongest arguments that it suggests. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Weixel v. Bd. of Educ. of the City of New* York, 287 F.3d 138, 145-46 (2d Cir. 2002). In the Amended Complaint, Plaintiff alleges that Defendants conspired to deprive her of her property and/or her right to dispose of the Morpurgo House in the manner of her choosing and at the fair market value. Plaintiff further alleges that such a conspiracy violates her First, Fourth, Fifth and Fourteenth Amendment rights. In construing Plaintiff's claims in the broadest manner possible, the Court understands Plaintiff's allegations to be that Defendants are conspiring to "constructively evict" Plaintiff and force her to sell the Property at a fraction of its fair market value. Plaintiff further alleges that these actions are being taken against her as an "impoverished senior citizen."

### A. Plaintiff's Section 1983 Claims

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

14

> privileges, or immunities secured by the Constitution and laws, shall
> be liable to the party injured. . . .

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege conduct

attributable to a person acting under state law that deprived plaintiff of a right secured by the

Constitution of the United States. *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)

(quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Therefore, a Section 1983 claim has two

essential elements: (1) the defendant acted under color of state law, and (2) as a result of the

defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his

constitutional rights or privileges. *See Quinn v. Nassau Cty. Police Dept.,* 53 F. Supp. 2d 347,

353 (E.D.N.Y. 1999).

### 1.    *The Sag Harbor Defendants*

The Sag Harbor Defendants move to dismiss, pursuant to Rule 12(b)(6), asserting that the

Amended Complaint "fail(s) to provide a statement of claims to which defendants can reasonably

be expected to respond, (and) fails to state any discernible claims at all." Sag Harbor Defs.'

Mem. at 8. The Sag Harbor Defendants maintain that the Amended Complaint lacks "any

coherent facts in support of any viable legal claim against any of the named Defendants[,]" and

"appears designed to harass and burden the defendants . . . into abiding plaintiff's wishes with

regard to her property." Arntsen Aff. [DE 10], ¶ 17; *see also* Arntsen Reply Aff. [DE 29], ¶ 5.

Pursuant to Rule 12(b)(5) the Sag Harbor Defendants further move to dismiss on the

grounds that they are "municipal corporations" and thus, under Rule 4(j), Plaintiff was required

to serve them by (1) personally serving the "chief executive officer[s]" of the respective entities,

or (2) in a manner prescribed by state law which, here, was to personally serve "the mayor, clerk

or any trustee[,]" (N.Y. CPLR § 311(a)(6)), or by mail accompanied by the prescribed form

(N.Y. CPLR § 312-a). Sag Harbor Defs.' Mem. at 2-3 (citations omitted). However, the Sag Harbor Defendants contend, the only service attempted was a mailing by the U.S. Marshals (pursuant to Court Order granting Plaintiff leave to proceed *in forma pauperis*), sent via regular mail, with forms entitled "'Notice and Acknowledgment of Receipt and Summons and Complaint by Mail' . . . pursuant to [R]ule 4(d)(1) of the Federal Rules of Civil Procedure." *Id.* at 3; Arntsen Aff., Ex. D. Accordingly, the Sag Harbor Defendants maintain, such service is insufficient under Rule 4(j)(2) because it was not made upon the Village's Chief Executive Officer or in compliance with New York State law. Sag Harbor Defs.' Mem. at 3 (citation omitted).

Plaintiff opposes the Sag Harbor Defendants' Motion to Dismiss, arguing that the "First Amended Complaint states with sufficient clarity the issues and claims upon which relief may be granted, together with initial documentation as attachments, and does so in a manner that may be easily Answered by Defendants." Pl.'s Opp'n [DE 16], ¶ 3. Plaintiff requests that, in the event the Court finds that the Amended Complaint does not "speak adequately toward the establishment of probable cause[,]" she be allowed "to file a Second Amended Complaint in the form of an Affidavit with consecutively numbered paragraphs together with even more allegations and identified Defendants for wrongful acts still continuing since the filing of the initial Complaints." *Id.*, ¶¶ 3, 4. In response to the Sag Harbor Defendants' assertions regarding the purported insufficiency of service of the Summons and Complaint, Plaintiff argues that service was performed pursuant to the Marshal Service's "standard procedures for the service of process over which Plaintiff has no direct control[,]" and that "[a]ny deficences . . . be corrected either directly through the Court or through the Pro Se Clerk's Office." *Id.*, ¶ 2**.**

From the face of the Amended Complaint, it appears that Plaintiff is alleging a conspiracy by the Sag Harbor Defendants to violate her rights under Section 1983. For example, Plaintiff contends that the Sag Harbor officials and government entities named as Defendants,

> acting under color of law in violation of 42 U.S.C. Section 1983 in concert and/or conspiracy with, and in sympathy with, the private interests of neighbors and predatory real estate developers, including Trustees of John Jermain Memorial Library, and community subscribers to the John Jermain Future Fund, and by Plaintiff's sister Helga Morpurgo and her attorneys, Caleca & Towner, PC, to violate Plaintiff's First, Fourth, Fifth and Fourteenth Amendment Rights and to deprive Plaintiff of all of her civil rights and property without due process.

Am. Compl. at 3. Thus, Plaintiff seeks to hold the municipal Defendants -- The Village of Sag Harbor, the Sag Harbor Police Department and the Sag Harbor Buildings Department -- liable under Section 1983. Plaintiff also brings Section 1983 claims against certain individuals employed by The Village of Sag Harbor -- Gregory Ferraris as the appointed Mayor, Edward Deyermond as retiring elected Mayor, J. Doe #1 through #N of the elected or acting Board of Trustees, Police Chief Thomas Fabiano, Police Officer Patrick Milazzo, Fire Marshal Timothy Platt and Building Inspector Albert Daniels (as material witness).

As a threshold issue, the Court must address the first of the two elements of a Section 1983 claim, namely, whether the Sag Harbor Defendants acted "under color of state law." The Court finds that the individual Sag Harbor Defendants are, in their personal capacities, amenable to suit under Section 1983, "inasmuch as they were conducting themselves as supervisors for a public employer and thus were acting under color of state law." *Annis v. County of Westchester*, 36 F.3d 251, 253 (2d Cir. 1994) (citation omitted).

There is, however, a question regarding whether Plaintiff has a cognizable Section 1983 claim against the municipal Defendants because the statute does not provide a cause of action on the basis of *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). Rather, a Section 1983 claim against a municipality such as The Village of Sag Harbor, or municipal agencies such as the Sag Harbor Police Department and Buildings Department, is cognizable only where the alleged constitutional violation by municipal employees resulted from a government custom, policy, pattern or practice. *See Dean v. New York City Transit Auth.*, 297 F. Supp. 2d 549, 554 (E.D.N.Y. 2004) (citing, *inter alia*, *Monell*, 436 U.S. at 690-91). Importantly,

> [t]he policy or custom used to anchor liability need not be contained in an explicitly adopted rule or regulation. . . . So long as the discriminatory practices of city officials are persistent and widespread they could be so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability.

*Sorlucco v. New York Police Dep't*, 971 F.2d 864, 870-71 (2d Cir.1991). However, "an individual official's acts can rise to the level of 'policy' when 'senior personnel' knowingly 'acquiesce' in their subordinates' behavior." *Krulick v. Bd. of Educ. of New York City*, 781 F.2d 15, 23 (2d Cir.1986) (citing *Turpin v. Mailet*, 619 F.2d 196, 203 (2d Cir.1980)). Thus, a municipal entity can be held liable only if the plaintiff "can prove that the violation was committed pursuant to a 'policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officer.'" *Rumala v. New York City Transit Auth.*, No. 02 CV 3828, 2005 WL 2076596, at *9 (E.D.N.Y. Aug. 26, 2005) (quoting *Monell*, 436 U.S. at 690) (additional citations omitted). The Court is unable to ascertain from the Amended Complaint

18

what policy, practice or custom, if any, Plaintiff is asserting or how such policy or practice is discriminatory.

Under Second Circuit precedent, the plaintiff bears the burden of establishing as a matter of law that the conduct of a given official represents an official policy. *See Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000). In the instant case, the closest Plaintiff comes to alleging a municipal policy or practice is contained in the eighth paragraph under section III of the Amended Complaint:

> The instant complaint arises from a new wave of Police harassment in response to intensified community pressure widely reported and endorsed in the local Press from subscribers to John Jermain Future Fund who are anxious to keep the private Library from moving and from losing its funding from the School District for failure to provide requisite services therein, and who are seeking to purchase Plaintiff's property both for expansion, and for the extremely valuable Trophy historical structure that can be removed and used by them to raise funding for the privately owned Jermain Library. But these persons have never been willing and continue to be unwilling to pay a fair market price for the ten bedroom, eight-unit apartment house now occupied as a faculty residence under net lease to a rival not-for-profit foundation, The Savant Garde Institute, which is seeking to create an Art Center and rehabilitated residence for Plaintiff, Founder and Tenant in Common.

Am. Compl. at 4. Plaintiff apparently wants the Court to infer that Defendant John Jermain Future Fund, a private entity, pressured the Sag Harbor Police Department and/or certain police officers to take actions which would ultimately enable the Fund to acquire Plaintiff's property and to use such property for an expansion of the private Library. Further, Plaintiff claims the Fund is purportedly unwilling to pay a fair market price for the Property. In Plaintiff's formulation, these generalized assumptions comprise a violation of her constitutional rights.

With respect to the Police Department, Police Chief Thomas Fabiano and Police Officer Milazzo,[3] Plaintiff alleges that (1) Officer Milazzo took advantage of the access he was given to the Property "to report on dilapidated conditions therein, allegedly in rogue abuse of official discretion," and such conduct was a violation of "Plaintiff's privacy rights and Fourteenth Amendment rights to equal protection" (Am. Compl. at 4-5); (2) Officer Milazzo and an unnamed police officer "opportunistically used information supplied by Helga Morpurgo," in violation of Plaintiff's Fourteenth Amendment rights, "to file false complaints with the Health Department and the Adult Protective Services. . . ." (*id*. at 5); (3) Officer Milazzo and Police Chief Fabiano acted "in a gross abuse of power" and in violation of The Patriot Act in causing a letter from the Suffolk County Water Authority (the "Greenwood Letter") to be elicited "to facilitate issue of a warrant to search the premises for illegal occupants" (*id*.); and (4) Officer Milazzo and J. Doe acted upon the Greenwood Letter, in violation of Plaintiff's Fourth and Fourteenth Amendment rights, to press the Buildings Department and the Fire Marshall "to demand immediate access to Plaintiff's home, which Plaintiff denied. . . ." (*id*. at 6). Moreover, Plaintiff asserts that the conduct of Officer Milazzo and "J. Doe" of the Sag Harbor Village Police was "committed in rogue retaliation against Plaintiff for the filing of many previous grievances against Sag Harbor Village Police and Police Chief Thomas Fabiano, also in violation of her First, Fourth, Fifth and Fourteenth Amendment rights and 42 U.S.C. Section 1983." *Id*. at 7. Finally, Plaintiff contends that the Police Department conspired with several other Defendants

---

[3] Plaintiff also alleges that Officer Milazzo has "a private interest favoring the Library" (Am. Compl. at 4), although she does not specify the nature of this purported interest or how it has affected the Officer's conduct or caused injury to Plaintiff.

"to constructively evict and force Plaintiff to sell her residence at a fraction of its present realtor listed asking price of $4,500,000 for a long period of years. . . ." *Id.* at 8-9.

Regarding Fire Marshal Timothy Platt, Plaintiff alleges that (1) Fire Marshal Platt's inspection on February 15, 2007 of "all areas of the house except the second-floor residential area [despite] knowing full well the house was closed and empty of tenants for winter except for the Owner/Caretaker's quarters[,]" violated the warrant which permitted only access to "the hallways and commercial portions of the buildings strictly for the purpose of determining whether the residential areas on the second floor had requisite safe dual access and smoke alarms[,]" and constituted an "act of selective enforcement" which violated Plaintiff's Fourteenth Amendment right to equal protection under the law" (Am. Compl. at 6); (2) in citing Plaintiff with "numerous New York State Code violations in the closed and uninhabited and commercial areas of her house that are not normally cited against seniors residing in grandfathered apartment houses known to be empty of commercial tenants within the Historic Landmarked District of Sag Harbor," Fire Marshal Platt "exceeded his official authority by acting as health inspector and an electrical wiring inspector, neither of which he is officially qualified to be" (*id.*); (3) Fire Marshal Platt's "selective enforcement of the New York State Code [was] in violation of 42 U.S.C. Section 1983 in order to place [Plaintiff's] grandfathered multifamily certificate of occupancy in jeopardy" (*id.* at 7); and (4) Platt's "malicious posting" of Plaintiff's Property "as unfit for human occupancy and without adequate notice to Plaintiff" threatened Plaintiff's "health, safety and property rights . . . to intimidate her into selling to Michael Wolohojian for only $900,000 or face the prospect of being removed from her home and put into an adult home. . . ." *Id.* at 8.

As to Albert Daniels (sued as a "material witness"), Plaintiff alleges that Daniels was present when Fire Marshal Platt (1) attempted to preclude entrance to the Property on February 15, 2007 (*id*. at 6), and (2) wrongfully cited Plaintiff for violations of the New York State Code (*id*.).

Regarding Mayor Gregory Ferraris, Plaintiff claims that he (1) gave orders to Officer Milazzo in connection with Officer Milazzo's eliciting the Greenwood letter (*id.* at 5); (2) conspired with Fire Marshal Platt to designate the Property "as unfit for human occupancy and without adequate notice to Plaintiff" for the purpose of intimidating Plaintiff to sell the Property to Wolohojian for a below-market price; and (3) conspired with the Police Department "to constructively evict and force Plaintiff to sell her residence at a fraction of its present realtor listed asking price. . . ."[4] *Id*. at 8-9.

Turning to the Village of Sag Harbor, Plaintiff alleges that an unnamed representative of the Village, as well as others, gave "malicious instructions to Officer Milazzo concerning the inspection of the "dilapidated conditions" of the Property. *Id*. at 4-5. With regard to the Village and its former Mayor Edward Deyermond, past Boards of Trustees, and "other former Village Mayors and Boards of Trustees since 1987," Plaintiff further asserts that "confusing and inequitable building permit application procedures" have been instituted for the purpose of "block[ing] Plaintiff's repeated efforts to get building permits to bring the multifamily structure

---

[4]     Plaintiff alleges that Mayor Ferraris "sits in brazen conflict of interest as both unelected Sag Harbor Village Mayor and appointed President of the Board of Trustees of John Jermain Memorial Library. . . ." Am. Compl. at 9. Plaintiff also asserts that Mayor Ferraris's accounting firm "services" the John Jermain Future Fund. *Id*. at 5. However, Plaintiff does not allege any wrongdoing on the part of Mayor Ferraris stemming from his multiple roles and the Court unable to ascertain the relationship, if any, between Mayor Ferraris's multiple roles and Plaintiff's alleged injuries.

up to New York State Code. . . ." *Id*. at 8. Finally, Plaintiff argues that former Mayor

Deyermond instigated community pressures in support of the Fund and against the Property.

*Id*. at 10.

Here, even in light of the relaxed standards applied to *pro se* complaints, the Court finds

that the incidents described in the Amended Complaint do not constitute "municipal policy,

practice or custom" consistent with *Monell v. Department of Social Services of the City of New

York*, 436 U.S. 658 (1978). *See Dean*, 297 F. Supp. 2d at 555. In the context of a Section 1983

claim, a "plaintiff must make specific allegations of fact that indicate a deprivation of

constitutional rights; allegations which are nothing more than broad, simple and conclusory

statements are insufficient." *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992)

(quoting *Laird v. Tatum*, 408 U.S. 1, 10 (1972)). After a careful review of the pleadings, the

parties' submissions and the applicable case law, I find that Plaintiff has failed to sufficiently

allege that the Sag Harbor Defendants' purported conduct resulted from any government custom,

policy, pattern or practice which violated her rights.

Additionally, "[i]t is well settled in this Circuit that 'personal involvement of defendants

in alleged constitutional deprivations is a prerequisite to an award of damages under [Section]

1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*,

950 F.2d 880, 885 (2d Cir. 1991)). The Supreme Court recently held that "[b]ecause vicarious

liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each Government

official defendant, through the official's *own individual actions*, has violated the Constitution."

*Iqbal*, 129 S. Ct. at 1948 (emphasis added). In other words, "*Iqbal's* 'active conduct' standard

only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand

in the alleged constitutional violation." *Bellamy*, 2009 WL 1835939, at *6. In the instant action, Plaintiff's allegations against several of the individual Sag Harbor Defendants are sparse at best and do not meet the viability standard under *Iqbal*.

For example, the only allegations against Mayor Ferraris are that (1) "on information and belief," he gave orders to Officer Milazzo to "cause[] to be elicited" the Greenwood Letter (Am. Compl. at 5); (2) he conspired with Fire Marshal Platt and others to designate Plaintiff's home as unfit for human occupancy on a three-day weekend in freezing temperatures (*id*. at 7); and (3) others acted on Ferraris' behalf (*id.* at 8) in attempting "to constructively evict and force Plaintiff to sell her residence at a fraction of its present realtor listed asking price[,]" as evidenced by the fact that Ferraris "sits in brazen conflict of interest as both unelected Mayor of Sag Harbor and appointed President of the Board of Trustees of [the] . . . Library" (*id*. at 9). The allegations against Edward Deyermond, who is sued as "retiring elected Mayor," are that as a former Mayor of Sag Harbor, he bears responsibility for the Town's (1) institution of "confusing and inequitable building permit applications procedures[,]" which, according to Plaintiff, are intended "to block [her] repeated efforts to get building permits to bring the multifamily structure up to New York State Code[,]" and (2) removal "of procedural barriers to favor every effort of the . . . Fund to obtain variances and concessions from joint meetings of all the Village Boards for permission to demolish Plaintiff's home, without her consent, in order to make room for [the] . . . Library expansion. . . ." *Id*. at 8.

According to Plaintiff, former Mayor Deyermond "instigated" community pressures in support of the Fund, and such pressures caused "a state of panic and desperation" to Plaintiff's sister Helga Morpurgo (a.k.a. Christine Stanley). *Id*. at 10. The sole allegation against Police

Chief Fabiano is that he conspired with Fire Marshal Platt and others to designate Plaintiff's home as unfit for human occupancy. *Id*. at 7. Plaintiff further maintains that the actions of Officer Milazzo and unnamed police officers were "committed in rogue retaliation against Plaintiff for the filing of many pervious grievances against Sag Harbor Village Police and Police Chief Thomas Fabiano." *Id.* However, Plaintiff does not claim that Fabiano ordered such actions. Finally, the only allegations against Albert Daniels, who is sued as a "material witness," is that he was present when Fire Marshal Platt designated Plaintiff's home as unfit for human occupancy. *Id*. at 6.

Assuming Plaintiff's allegations against Defendants Ferraris, Deyermond, Fabiano and Daniels to be true, Plaintiff has, at most, alleged that these Defendants knew of and possibly acquiesced in the constitutional violations committed by their subordinates (namely, Officer Milazzo and Fire Marshal Platt). However, Plaintiff has not stated that any of these Defendants participated directly in the alleged illegal conduct (*i.e.*, the inspections of the Property and the posting of the sign indicating Plaintiff's home was unfit for human occupancy). Based upon the lack of particularized allegations against these four individuals, and in light of the Supreme Court's holding in *Iqbal* eliminating supervisory liability in situations where supervisors knew of and acquiesced in a constitutional violation committed by a subordinate, Plaintiff's 1983 claims against Ferraris, Deyermond, Fabiano and Daniels cannot survive the motion to dismiss.

Although Plaintiff has shown that the Sag Harbor Defendants can be construed as acting under color of state law, she has not set forth specific facts to meet the second element of a Section 1983 claim, namely, that the "incidents" described in the Amended Complaint constitute a deprivation of her constitutional rights. Her broad, suggestive, and conclusory statements are

insufficient. For these reasons, I respectfully recommend to Judge Seybert that Plaintiff's claims against the Sag Harbor Defendants be dismissed.[5]

### 2. SCWA Defendants

Defendants Suffolk County Water Authority ("SCWA") and Paul Greenwood ("Greenwood") move to dismiss, pursuant to Rule 12(b)(6), arguing that the Amended Complaint "fails to state any viable claim for relief against the SCWA and Greenwood and contains allegations that are so vague and conclusory that Defendants SCWA and Greenwood cannot formulate a response." Shea Aff. [DE 33], ¶ 2; *see also* SCWA Mem. [DE 34] at 8.

In addition, the SCWA moves to dismiss, pursuant to Rule 12(b)(5), on the grounds that, as a "public authority,"[6] it is treated as an agency and instrumentality of the state. SCWA Mem. at 12. Thus, according to the SCWA, Plaintiff was obligated to serve the SCWA by (1) personally serving the "chief executive officer" of the SCWA under Rule 4(j) (discussed above), or (2) "personal delivery to an officer, director, managing or general agent or other agent authorized by appoint or by law to receive service" under CPLR § 311(a)(1). *Id*. at 12-13 (citation omitted). The SCWA asserts that in the instant case, delivery of the Summons and Complaint by mail with the Notice and Acknowledgment form (Shea Aff., Ex. C, D), was insufficient to establish proper service. *Id*. at 12-13.

---

[5] Having found that Plaintiff has not stated a Section 1983 claim pursuant to which relief can be granted, it is not necessary to address the Sag Harbor Defendants' assertions regarding the sufficiency of service of the Summons and Complaint.

[6] The SCWA is a public benefit corporation created in 1951 under the New York State Public Authorities Law Article 5, Title 4, Sections 1074-1092. Its purpose is to provide water to the residents of Suffolk County. *See* SCWA Mem. at 3; Shea Aff., ¶ 7.

Defendant Greenwood further asserts that, as a government official being sued for monetary damages in connection with performing a discretionary task as part of his responsibilities as Assistant Superintendent of the SCWA, he is entitled to qualified immunity. SCWA Mem. at 13-14.

Plaintiff opposes the SCWA Defendants' motion to dismiss, arguing that the allegations in the Amended Complaint are sufficient to establish viable claims against these Defendants. Pl.'s SCWA Opp'n [DE 40], ¶¶ 3-4, 7-8. Plaintiff again requests that, in the event the Court finds that the Amended Complaint does not "speak adequately toward the establishment of probable cause," she be allowed to file a Second Amended Complaint in the manner previously noted. *Id.*, ¶ 5. In response to the SCWA Defendants' assertions of insufficient service of the Summons and Complaint, Plaintiff again requests that the Court directed the U.S. Marshals Service to re-serve the SCWA Defendants. *Id.*, ¶2.

In connection with the SCWA Defendants, Plaintiff states that

> on or about February 9, 2007, Patrick Milazzo with Helga Morpurgo and/or her Attorney, Andrew Towner, Esq., and/or Village Police Chief Thomas Fabiano and/or J. Doe of Sag Harbor Village Board of Trustees, on information and belief also acting on orders from Mayor Gregory N. Ferraris . . . caused to be elicited a letter signed by Paul Greenwood, Assistant Superintendent of the [SCWA's] East Hampton Office, which professed to have damaging and defamatory second-hand knowledge of numerous New York State Code violations on the premises in portions of the house to which unnamed employees had criminally trespassed, to facilitate issue of a warrant to search the premises for illegal occupants.

Am. Compl. at 5. Thus, from the face of the Amended Complaint, Plaintiff is alleging that the February 9, 2007 letter sent by Paul Greenwood to the Sag Harbor Police Department (the "Greenwood Letter") (Am. Compl., Ex. 1; Shea Aff., Ex. E), purportedly caused the Village

Police to issue a warrant to search Plaintiff's Property for illegal occupants. Plaintiff further

asserts that

> [t]he Greenwood Letter was later shown to be completely uncorroborated when meter readings produced by John C. Milazzo of Suffolk County Water Authority's Legal Department disproved excessive water usage and presented no corroborating record of past Health Department violations of standing raw sewage or garbage was produced. Further, despite Paul Greenwood's insistence to the contrary, [SCWA's] Legal Department by John C. Milazzo, Esq., denied any knowledge of such a letter ever having been seen, authorized or sent, and further to be in violation of all Company policy. Nevertheless, the SCWA is held liable for the letter signed by employee Paul Greenwood in that it failed to issue a public disclaimer to Southampton Town Justice Court as demanded by Plaintiff or to confirm its position in writing.

*Id.* at 5-6. Plaintiff's opposition papers maintain that the SCWA and Greenwood conspired with

the other Defendants to "illegally deprive [her] of [her] right to develop and dispose of [her]

property at fair market value[,]" in violation of Section 1983. Pl.'s Opp'n, ¶¶ 4, 8.

In support of their motion to dismiss, the SCWA Defendants provide the following

information regarding the Greenwood Letter. The SCWA is responsible for providing water to

Suffolk County residents and, as such, services Plaintiff at her address in Sag Harbor and

operates a meter on the premises for the purpose of assessing fees for Plaintiff's water usage.

SCWA Mem. at 3. On January 13, 2005, April 12, 2005 and July 27, 2006.[7] Plaintiff requested

that the SCWA send a customer service representative to the Property to read her water meter

which, at that time, was located in her basement. During these visits, the SCWA representative

apparently noticed "several unusual conditions" which were recorded in the SCWA file regarding

Plaintiff's property. Then, "the SCWA, in the normal course of its operations, determined that it

---

[7] The Greenwood Letter inadvertently stated the third date as "7/27/07." *See* SCWA Mem. at 3 n. 1

28

was unsafe and hazardous for its workers to enter plaintiff's house to read her meter[,]" and so moved the reading device to the outside of Plaintiff's home. *Id*. at 3-4. On February 9, 2007, Paul Greenwood "wrote a letter to the Sag Harbor Police Department, advising it of the past conditions of plaintiff's property." *Id.* at 4. The SCWA Defendants maintain that the letter was written at the request of the Sag Harbor Village Police and that it "was a recitation of the facts, as observed by SCWA." *Id*. Concerning these observations, the Greenwood Letter states as follows:

> The pipes were broken and there was no running water. The homeowner filled a bucket with water from a nozzle in the basement. There was standing water in the basement, at least knee-deep, that had copious amounts of raw sewage floating in it. What appear to be many years of garbage was accumulated and stacked up throughout the residence, in the hallways, rooms and basement, making it very difficult to maneuver inside the residence. All of our personnel reported an overwhelming stench of raw sewage permeating the house.

Shea Aff., Ex. E.

In construing the Amended Complaint to raise the strongest arguments that it suggests, Plaintiff appears to be alleging (1) that by sending the February 9, 2007 letter to the Sag Harbor Police Department, Greenwood and, by extension, the SCWA, were conspiring with the other Defendants "to facilitate issue of a warrant to search the premises for illegal occupants" (Am. Compl. at 5), and (2) that the search conducted by the Police pursuant to that warrant was part of a plan to constructively evict Plaintiff from her home to allow for the expansion of the Library onto the Property.

To sustain a claim for conspiracy under Section 1983, a plaintiff must demonstrate that a defendant "acted in a willful manner, culminating in an agreement, understanding, or meeting of

the minds, that violated the plaintiff's rights . . . secured by the constitution or the federal courts."

*Malsh v. Corr. Officer Austin*, 901 F. Supp. 757, 765 (S.D.N.Y. 1995) (citations and internal quotations omitted). Here, Plaintiff has failed to plead a conspiracy because she has not alleged any facts showing that Greenwood and/or the SCWA entered into any type of agreement with the other Defendants. Rather, as the SCWA Defendants have explained, the letter was written at the request of the Police and was strictly "a recitation of the facts, as observed by SCWA[,]" during readings of Plaintiff's water meter which were conducted as part of the SCWA's normal course of business *and at Plaintiff's multiple requests*. SCWA Mem. at 3-4. Moreover, as the SCWA Defendants point out, the conditions of the Property which are described in the letter were observed by SCWA employees long before the Village Police ever requested information from the SCWA, and before the issuance of the alleged warrant to search Plaintiff's home for illegal occupants. *Id*. at 11.

In connection with Plaintiff's earlier motion for a preliminary injunction, this Court held oral argument and counsel for the SCWA Defendants stated as follows:

> Although we've not put in papers with regard to this motion, primarily because the Suffolk County Water Authority really could care less as to who owns this property or what the division of interest with respect to the property is. But just very briefly, due to the fact that plaintiff has referenced this letter from the Suffolk County Water Authority today that was authored by Paul Greenwood as supposed evidence of a conspiracy, although the plaintiff may disagree with the accuracy of the letter which I think she has made clear today, obviously this letter doesn't equate to any evidence of a conspiracy. There's nothing alleged in the complaint that Suffolk County Water Authority or Mr. Greenwood had any connection whatsoever with the other defendants. The letter is what it is. It was merely a letter to the police in response to her request to detail what they saw on visits to check the water meter.

Transcript of Aug. 31, 2007 hearing at 17-18; *see also* DE 64 at 21-22. The Court finds the argument of the SCWA's counsel persuasive.

Moreover, contrary to Plaintiff's assertions, the Greenwood Letter does not contain any statement that could reasonably be construed as "second-hand knowledge of numerous New York State code violations on the premises" (Am. Compl. at 5). In fact, the letter makes no mention of any health code violation, and further, does not say anything about illegal occupants. In effect, Plaintiff is asking the Court to infer the existence of a conspiracy based upon the Greenwood letter because Plaintiff disputes its contents. *See* DE 64 at 21. However, "[c]onclusory, vague and general allegations of conspiracy[,]" such as those set forth by Plaintiff with respect to the SCWA Defendants, are insufficient to withstand a motion to dismiss. *See Malsh*, 901 F. Supp. at 763 (citations omitted). Plaintiff has presented no evidence to support her theory of a conspiracy with regard to the SCWA Defendants and what she describes here is not the equivalent of a conspiracy for Section 1983 purposes.

Furthermore, as discussed above, for the SCWA, as a municipal entity, to be held liable under Section 1983, Plaintiff must establish as a matter of law that the alleged violation "was committed pursuant to a 'policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officer.'" *Rumala*, 2005 WL 2076596, at *9 (quoting *Monell*, 436 U.S. at 690). As the SCWA Defendants point out, Plaintiff has not alleged that the Greenwood Letter was issued pursuant to an SCWA policy or regulation or was otherwise officially adopted and promulgated by the SCWA. SCWA Mem. at 10 (citing *Jeffes*, 208 F. 3d at 57). In fact, in the Amended Complaint, Plaintiff alleges that the SCWA's legal department "denied any knowledge of such a letter even having been seen, authorized or sent, and further to

31

be in violation of all Company policy." Am. Compl. at 6. This allegation actually undermines Plaintiff's 1983 claim with respect to the SCWA Defendants because, if true, it would show that the letter was not written pursuant to SCWA policy. In any event, because the Court finds that Plaintiff has not adequately pleaded a conspiracy under Section 1983 with respect to the SCWA Defendants, it is not necessary to decide this additional issue of municipality liability at this time.

Because Plaintiff has not adequately pleaded a conspiracy under Section 1983 with respect to the SCWA Defendants, I respectfully recommend to Judge Seybert that Plaintiff's claims against the SCWA and Greenwood be dismissed.[8]

### 3. The Remaining Defendants

The Court now turns to analyzing the sufficiency of Plaintiff's Section 1983 claims against the remaining Defendants -- Caleca & Towner, P.C.; Andrew Towner, Esq.; the John Jermain Memorial Library;[9] J. Doe #1 through #N of the appointed or elected Board of Trustees

---

[8] Having found that Plaintiff has not adequately pleaded a conspiracy under Section 1983 with respect to the SCWA Defendants, it is not necessary to address the SCWA's argument regarding the sufficiency of service or Greenwood's contentions regarding qualified immunity.

[9] Plaintiff also sues Gregory N. Ferraris in his capacity as President of the Board of Trustees of the Library. However, the Court has already addressed all of the claims against Ferraris and will not repeat that analysis here. Moreover, the Library and Gregory Ferraris filed an Answer to the Amended Complaint and crossclaims against all other Defendants (*see* DE 44), but did not file a motion to dismiss. For the sake of judicial efficiency, the Court will nonetheless address the sufficiency of Plaintiff's claims against the Library here.

of the Library; the John Jermain Future Fund;[10] Gail Slevin as a "Contact" of the Fund; Christine

Stanley (a.k.a. Helga Morpurgo); Michael A. Wolohojian;[11] and Peter Darrow.

Defendants Caleca & Towner and Andrew Towner, Esq. (together, the "Towner

Defendants") are counsel for Helga Morpurgo in the related State Action discussed above.

Towner Aff. [DE 27], ¶ 1.  In the Amended Complaint, Plaintiff asserts that the Towner

Defendants, along with their client Helga Morpugro, "have actively cooperated with Sag Harbor

Village Police[,]" as well as "private real estate interests" in repeatedly attempting "to

constructively evict and force Plaintiff to sell her residence at a fraction of its present realtor

listed asking price. . . ."  Am. Compl. at 8-9.  Plaintiff also claims that the Towner Defendants

have engaged in misconduct during the State Action, including (1) submitting Helga Morpurgo's

"distorted affidavit to a renewed Partition Action" to the presiding Supreme Court Justice;

(2) sharing the information contained in the affidavit with Officer Milazzo; (3) "violat[ing]

attorney's ethical conduct and further engag[ing] in malpractice against . . . Helga Morpurgo, an

alleged judgment impaired senior now having run up a largely unnecessary legal bill of

$66,000[;]" and (4) exploiting Helga, whom Towner knows to be "a senior and in a state of panic

and desperation[,]" and coercing her "into an unnecessary and unwise Partition auction of

---

[10]      Plaintiff also sues "Ferraris, CPA, LLC" as "Contact" of the Fund.  However, as stated above, the Court has already addressed all of the claims against Ferraris and need not repeat that analysis here.

[11]      No notice of appearance has been filed on behalf of Defendant Wolohojian. However, based upon Wolohojian's return of the Acknowledgment Form and Waiver of Service on June 4, 2007 (*see* DE 50), the Court assumes that he received notice of Plaintiff's claims against him.  Even though Defendant Wolohojian has neither appeared nor filed a motion to dismiss in this case, for the sake of judicial efficiency the Court will still address the sufficiency of Plaintiff's claims against him.

Plaintiff's property[,]" for the purpose of earning "exorbitant legal fees . . . [or] other favors in the form of professional advancement or other personal gain. . . ." *Id*. at 9-10.  The Towner Defendants move to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) and, under 28 U.S.C. § 1915(e)(2)(B)(i), (ii), for filing frivolous litigations as a *pro se* plaintiff which here is "designed to financially punish her sister and the law firm representing [her] sister[.]"  *See* Towner Aff. [DE 27], ¶¶ 3-4; Towner Mem. [DE 28] at 1, 5; Towner Reply Aff. [DE 32], ¶ 12.

Plaintiff opposes the Towner Defendants' motion to dismiss, arguing, *inter alia*, that given the value and strategic location of her Property (*i.e.*, that it is located adjacent to the Library which, according to Plaintiff, is in danger of "losing funding from the School District for failure to perform contracted-for public services while under [the] close and corrupt control" of Defendants), "there is ample cause to allege that Caleca/Towner Defendants have conspired with elected and appointed officials, police, and other attorneys acting as officers of the court, to deprive me of my civil and Constitutional rights and did so under color of law in violation of 42 U.S.C. Section 1983. . . ."  Pl.'s Towner Opp'n [DE 31], ¶¶ 6, 8.

Defendant Christine Stanley (a.k.a. Helga Morpurgo) is Plaintiff's sister and the owner of a 37.5% interest in the property being adjudicated in the in the State Action.  Stanley is also the Plaintiff in the State Action in which she is represented by the Towner Defendants.  Defendant Stanley is proceeding *pro se* in the instant litigation.  In the Amended Complaint, Plaintiff alleges that Stanley participated in the conspiracy to evict Plaintiff from her home, including the facts that Stanley (1) criminally trespassed inside Plaintiff's home and took staged photographs which she then presented in the State Court Action (Am. Compl. at 9); (2) shared this information with

Officer Milazzo, including falsely reporting that Plaintiff's home had no heat and had multiple health code violations (*id*. at 5); (3) conspired with Fire Marshal Platt to designate the property as unfit for human occupancy in order to further her private interests (*id*. at 8); and (4) conspired with the Police and "private real estate interests" to force Plaintiff to sell the property at below-market value (*id*. at 9). In her Affidavit in support of her motion to dismiss [DE 39], Stanley adopts the statements contained in the Towner Affidavit submitted in support of the Towner Defendants' motion to dismiss. *See* Stanley Aff. [DE 39], ¶ 2. Stanley also joins in the requests for relief submitted by the Towner Defendants and the Sag Harbor Defendants, and joins in the legal arguments made in those motions. *Id*., ¶ 3.

Plaintiff opposes Stanley's motion to dismiss on the grounds that, *inter alia*,

> "[g]iven such a valuable and strategic real estate parcel, there is ample cause to allege that Helga has actively conspired with elected and appointed officials, police, and other attorneys acting as officers of the court, filing many false complaints with the Health Department and the Adult Protective Service and criminally invading my premises, staging photographs, swearing false affidavits, all in the hope of helping Police attempt to deprive me of my civil and Constitutional rights under color of law in violation of 42 U.S.C. Section 1983 and for contemplated personal gain to prevail in a lawsuit . . . ."

Pl.'s Stanley Opp'n [DE 43], ¶ 9.

Defendant John Jermain Future Fund (the "Fund") is a not-for-profit corporation which "has expressed interest in potentially purchasing the Plaintiff's property so that it could be used for the expansion of the John Jermain Library." Strunk Aff. [DE 30], ¶¶ 1, 2.[12] Defendant Gail

---

[12] In support of their motion to dismiss, Defendants Slevin and the Fund submitted only a Notice of Motion and the Affidavit of Nica B. Strunk, counsel for the Fund Defendants [DE 30]. Generally, a memorandum of law is required in support of a motion to dismiss. However, the Strunk Affidavit contains legal arguments and citations to applicable case law and the Court accepts the Affidavit.

Slevin is the President of the Fund (*id.*, ¶ 2), and has been sued in her official capacity as such (Defendants Slevin and the Fund, together, the "Fund Defendants"). In the Amended Complaint, Plaintiff asserts that the Fund and its subscribers have conspired with various Defendants, including the Police Department and the Buildings Department, to constructively evict Plaintiff from the Property. For example, Plaintiff alleges that the Fund conspired with Officer Milazzo (1) to obtain a search warrant pursuant to which Officer Milazzo "took advantage of his access" to Plaintiff's home "to report on dilapidated conditions therein, allegedly in rogue abuse of official discretion[,]" and (2) caused the Greenwood Letter to be elicited in order "to facilitate issue of a warrant to search the premises for illegal occupants." Am. Compl. at 4-5. Plaintiff also maintains that the Fund conspired with Fire Marshal Platt to designate the Property as unfit for human occupancy in order to "intimidate and induce an immediate below-market sale or abandonment of the premises, to prevent acquisition of the property by anyone other than [the] Library" or certain individuals "low-bidding" on the Fund's behalf. *Id.* at 7.

The Fund Defendants move to dismiss the Amended Complaint on the grounds that, *inter alia*, Plaintiff has not alleged that they are state actors or engaged in a conspiracy with state officials in a manner that comports with the pleading requirements of a Section 1983 claim. Strunk Aff., ¶¶ 7-8. The Fund Defendants further point out that there are no allegations in the Amended Complaint pertaining to Gail Slevin. *Id.* at 14. Plaintiff opposes the Fund Defendants' motion to dismiss, arguing, *inter alia*, "[g]iven the true market value of my strategic real estate parcel, there is ample cause to allege that JJFF Subscriber DOE, among them SL[E]VIN and FERRARIS, have conspired with other elected and appointed officials, police, and other attorneys acting as officers of the court, to deprive me of my civil and Constitutional rights and

did so under color of law in violation of 42 U.S.C. Section 1983. . . ." Pl.'s Fund Opp'n [DE 38],

¶ 12. Plaintiff argues that the Fund is a "corrupt organization whose sole purpose has been to

attack and cloud the fair market value of my property and that of my neighbor . . . so that we

would either sell to one or another of the powerful Village-connected developers . . . or

eventually lose our properties to condemnation. . . ." *Id*., ¶ 8. As evidence of the purported

conspiracy, Plaintiff points to the fact "that the JJFF by Slevin, which insists it has the money to

meet the Court-fixed minimum bid at auction, has twice failed to enter an opening bid." *Id*., ¶ 9.

     Defendant John Jermain Memorial Library is a public library located in the Village of Sag

Harbor, adjacent to the Property which is partially owned by Plaintiff and which is the subject of

this litigation. *See* Strunk Aff., ¶ 2. In the Amended Complaint, Plaintiff asserts that the Library

conspired with various Defendants "to prevent acquisition of [Plaintiff's] property by anyone

other than [itself] and Peter Darrow, and /or to facilitate acquisition by Michael A. Wolohojian,"

who, according to Plaintiff, was "low bidding" on behalf of the Fund, Darrow and the Library, in

order to defeat a higher bid from a condo-developer. Am. Compl. at 7. Plaintiff further contends

that "J. Doe #1 through #N of the Board of Trustees" of the Library has conspired with other

Defendants to violate Plaintiff's civil rights "and the property rights of rival foundation, The

Savant Garde Institute. . . ." *Id*. at 7-8. Moreover, as noted above, Plaintiff contends that the

Library, along with others, has "conspired through the years to suppress knowledge of the true

history of Plaintiff's house," in order to prevent Plaintiff from receiving funds to restore the

Property and "to favor a below-market sale to the . . . Library prior to revealing its true worth for

the Library's own fundraising purposes." *Id*. at 10. As noted above, the Library did not submit a

motion to dismiss.

Defendant Peter Darrow is a resident of Sag Harbor and a neighbor of Plaintiff who, at one point in time, offered to buy Plaintiff's property. Darrow Mem. [DE 58] at 3, 6. In the Amended Complaint, Plaintiff alleges that Darrow, whom she describes as "an alleged founding contributor to the . . . Fund[,]" has conspired with the Library, the Fund, and other Defendants to "low-bid[]" on the Fund's behalf in order to "constructively evict" Plaintiff and to "facilitate acquisition [of the Property] by Wolohojian. Am. Compl. at 7, 9. Plaintiff asserts that the actions of Darrow and others caused a "competing higher-bidding condo-developer" to change "his offer to a contingency contract for fear of now not being able to obtain a building permit for the restoration of eight apartments." *Id.* at 7. Darrow moves to dismiss the Amended Complaint on the grounds that, *inter alia*, Plaintiff has not alleged that Darrow, a private citizen, acted jointly with public officials, and thus cannot establish a necessary element of a Section 1983 claim. Darrow Mem. at 7-9; Darrow Reply Mem. [DE 62] at 4-5. Plaintiff opposes the motion to dismiss, arguing that "[g]iven the long history of [Darrow's] attempts to acquire my property below fair market, and what [Darrow's extended family] stands to gain from such an acquisition, there is probable cause to name [Darrow] as a major figure in this network of conspiracy to acquire both my property and the [neighboring] Castaldo property at terms way below fair market for major Village development, event taking advantage of continuing tortuous interference from JJFF, Helga/Towner Police and Village to keep on driving the price down." Pl.'s Darrow Opp'n [DE 61], ¶ 21. Plaintiff further argues that the facts that there is evidence of Darrow's being a member of the purported "neighborhood conspiracy" in that (1) Darrow has refused her offer of settlement, and (2) has failed to bid at the Partition auction. *Id*. at 11, 21.

Defendant Michael A. Wolohojian is, according to Plaintiff, an "alleged intending purchaser" of the Property who, like Darrow, has conspired with the Library, the Fund, and other Defendants to (1) "low-bid[]" on the Fund's behalf in order to defeat an allegedly higher bid for the Property, and (2) to "constructively evict" Plaintiff in order to "facilitate acquisition" of the Property for himself. Am. Compl. at 7. As noted above, there has been no appearance on Wolohojian's behalf in this action.

In order to state a claim under Section 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F. 3d 307, 323 (2d Cir. 2002) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.") (Citations and internal quotations omitted.) Here, Plaintiff has not alleged that any of the remaining Defendants are state actors for purposes of Section 1983 and the Court finds that none of them are. Thus, these Defendants may only be subjected to a Section 1983 action if Plaintiff has adequately pleaded that they conspired with or willfully engaged in joint activity with the state or its agents. *See Hom v. Hon. Lawrence Brennan, J.F.C.*, 303 F. Supp. 2d 374, 378-79 (E.D.N.Y. 2004) (citing *Fariello v. Rodriguez*, 148 F.R.D. 670, 686 (E.D.N.Y. 1993)).

Private parties act under the color of state law if they jointly participate or conspire with a state actor to violate an individual's federal rights. *See Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 787, 794 (1966)); *see also Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) ("To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the

39

private entity acted in concert with the state actor to commit an unconstitutional act.").  "A private actor will be found to have acted jointly with a state actor if he and the state actor somehow reached an understanding to violate the plaintiff's civil rights." *Fisk*, 401 F. Supp. 2d at 376 (citations and internal quotations omitted).

To state a Section 1983 conspiracy claim, Plaintiff must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of the goal; (4) which causes harm to the plaintiff. *Ciambriello*, 292 F.3d at 324-25 (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  "A plaintiff is not required to list the place and date of defendants' meeting and the summary of their conversations when he pleads conspiracy . . . but the pleadings must present facts tending to show agreement and concerted action." *Fisk*, 401 F. Supp. 2d at 376 (citations and internal quotations omitted).  "Without a meting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy." *Id*. (citations and internal quotations omitted).

Here, Plaintiff has not set forth any allegations of an agreement or "meeting of the minds" between the Towner Defendants, the Fund Defendants, the Library, Stanley, Wolohojian or Darrow on the one hand, and any of the Sag Harbor or SCWA Defendants (*i.e.*, the state actors), on the other.  Plaintiff speculates that the interests of these private actors are aligned with respect to her property.  Such common interest, Plaintiff asserts, is evidence of concerted action by such Defendants, along with the state actors, to deprive Plaintiff of her purported "right to develop and dispose of [her] property at fair market value."  Pl.'s Darrow Opp'n, ¶ 7.  Certain of the individual Defendants -- in particular, Darrow, Wolohojian, the Fund, and the Library -- have, at some point, apparently expressed interest in purchasing Plaintiff's property.  Moreover, Stanley's

37.5% interest in the property has been declared in the State Action, in which she was and continues to be represented by the Towner Defendants. However, the fact that these individual may be interested in acquiring Plaintiff's property does not, without more, establish that they are or have been acting in concert with government actors to "constructively evict" Plaintiff from her home and to deprive her of purported constitutional rights. *See Ciambriello*, 292 F.3d at 324 ("Merely conclusory allegations that a private individual or entity acted in a concert with a state actor does not suffice to state a Section 1983 claim against the private actor."). Plaintiff's concluding the same is a large leap in logic without the necessary evidentiary support.

Likewise, Plaintiff has failed to allege -- either in the Amended Complaint or in her opposition papers to the motions to dismiss -- any overt act in furtherance of the purported conspiracy. Plaintiff has not pointed to any incident or act undertaken by these Defendants to conspire with any of the state actor Defendants to deprive Plaintiff of her constitutional rights. At most, Plaintiff has alleged that certain individual Defendants had communications with state actors regarding either the condition of Plaintiff's home or an interest in purchasing the property. However, "[c]ommunications between a private and state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make a private party a state actor." *Fisk*, 401 F. Supp. 2d at 377 (citation omitted). Moreover, even if the Court were to accept, as Plaintiff appears to assert, that certain individual Defendants had regular contact with the state actors, "[a]lleging merely that a private party regularly interacts with a state actor does not create an inference of agreement to violate a plaintiff's rights." *Id*. (citing *Kramer v. City of New York*, No. 04 Civ. 106, 2004 WL 2429811, at *7 (S.D.N.Y. Nov. 1, 2004)).

Interpreting the Amended Complaint broadly, the alleged interactions between the individual Defendants and the state actors do not rise to the level of "joint participation" or conspiracy. Thus, as to the individual Defendants, Plaintiff has failed to satisfy the first prong of a Section 1983 conspiracy claim -- *i.e.*, an agreement between a state actor and a private party. Having found that Plaintiff has failed to allege multiple required elements of a Section 1983 conspiracy claim as to all of the private actor Defendants, the Court now turns to certain aspects of Plaintiff's claims against each of these Defendants. To the extent that Plaintiff alleges that the Towner Defendants and Stanley conspired to deprive Plaintiff of her property, either by providing information to the Police or by using such information in the State Action, Plaintiff's claim must fail because she has not shown that either the Towner Defendants or Stanley are state actors. Courts in the Second Circuit "have held that litigants . . . and lawyers . . . are not clothed with the state's authority because they are using the state's judicial process or because they are officers of the court." *Srubar*, 875 F. Supp. at 163 (internal citations omitted). Moreover, "[l]aw firms and lawyers are clearly not state entities for the purposes of a Section 1983 claim." *Id.* (citations and internal quotations omitted). In light of the facts that (1) the Towner Defendants and Stanley are not state actors, and (2) as discussed above, Plaintiff has not established that such Defendants acted conspired with state actors, I respectfully recommend to Judge Seybert that the claims against them be dismissed.

Moreover, with respect to Defendant Stanley, the Court notes that she holds a 37.5% interest in the property and has been engaged in ongoing litigation with Plaintiff in the State Action over the Partition Sale of the Property. In light of these circumstances, the Court finds

Plaintiff's allegations that Defendant Stanley would conspire to lower the selling price of the Property to be neither logical nor reasonable. *See* DE 64 at 22.

Finally, although Defendant Gail Slevin is named as a Defendant in the caption of the case, there is no reference to Slevin in the body of the Amended Complaint. "It is well settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that Defendant should be granted." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (citations and internal quotations omitted).

In light of the above analysis, I respectfully recommend to Judge Seybert that Plaintiff's Section 1983 claims against the individual Defendants be dismissed. Having evaluated Plaintiff's Section 1983 claims, the Court now turns to Plaintiff's allegations of a purported conspiracy to violate her constitutional rights under Section 1985.

**B.  Section 1985 Conspiracy and "Protected Class" Status**

Although Section 1983 is the only statute cited by Plaintiff as the basis for the relief requested in the Amended Complaint, the Court construes the Second Cause of Action, which alleges "an overt, extensive and predatory community conspiracy to deprive Plaintiff of her First, Fourth, Fifth and Fourteenth Amendment rights to dispose of her property as she chooses and at fair market, and of all her civil rights as impoverished senior citizen. . . ." (Am. Compl. at 11), to be a claim brought under 42 U.S.C. § 1985 ("Section 1985"). Section 1985 provides a statutory remedy where a plaintiff can prove a conspiracy to violate his/her civil rights. The statute applies to individuals as well as to state actors. *See Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988); *Vertical Broad., Inc. v. Town of Southampton,* 84 F. Supp.

2d 379, 389 (E.D.N.Y. 2000). The statute does not create any substantive rights, but rather provides a remedy for the deprivation of rights guaranteed by the United States Constitution. *See Vertical Broad.,* 84 F. Supp. 2d at 389 (citing *Great Am. Fed. Sav. & Loan v. Novotny*, 442 U.S. 366, 372 (1979)).

Given the nature of the allegations in the Amended Complaint, Section 1985(3) is the applicable clause here. To state a claim under Section 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

*Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). A conspiracy is an agreement between two or more individuals where one acts in further of the objection of the conspiracy and each member has knowledge of the nature and scope of the agreement. *See Dove*, 56 F. Supp. 2d at 337.

To state a claim under Section 1985(3), the plaintiff must also show that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1999)). The "class" that is the subject of the purported "invidious discrimination required to be pled in a Section 1985 action cannot be defined merely as the class of alleged victims." *Vertical Broad.,* 84 F. Supp. 2d at 390 (quoting *Mele v. Christopher*, 7 F. Supp. 2d 419, 421-22 (S.D.N.Y. 1998)). In *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993), the Supreme Court characterized the phrase "or otherwise class-based invidiously discriminatory animus" as a "speculative" extension, beyond race, of the class of individuals intended to be protected by Section 1985. *Bray*, 506 U.S. at 269 (to establish a Section 1985

44

claim, a plaintiff must allege that the conspiracy was "aimed at interfering with rights that are protected against private, as well as official, encroachment").  Moreover, where the allegations are against private actors, "the rights plaintiff seeks to vindicate must be rights that are secured not only from official infringement, but also from private action."  *Srubar*, 875 F. Supp. at 162 (citing *Bray*, 506 U.S. at 758).

Even where a plaintiff is proceeding *pro se*, "[a] constitutional conspiracy claim must be pled with at least some degree of particularity."  *Dove*, 56 F. Supp. 2d at 338 (quoting *Laverpool v. New York City Transit Auth.*, 760 F. Supp. 1046, 1056 (E.D.N.Y. 1991)).  Here, Plaintiff asserts a loose confederation of incidents which she claims constitute an ongoing conspiracy by the Library and the Fund, along with others, to obtain her property at a price below fair market value.  In the Amended Complaint Plaintiff does not state which allegations pertain to which cause of action and so the Court reads the majority of the allegations as pertaining to Plaintiff's claims under both 1983 and 1985(3).  Plaintiff's allegations have been set forth in detail above and therefore are not repeated here.

It is well-settled that "in order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'"  *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)).  Here, the Court finds that Plaintiff has provided only conclusory, vague and unsupported allegations, some of which are asserted on information and belief, as a basis for asking the Court to find the existence of a conspiracy.  The Second Circuit has repeatedly held that such conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional

rights are insufficient -- even on the more lenient standard used to decide a motion to dismiss. *See Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983).

Plaintiff has not alleged or demonstrated any evidence that there was a "meeting of the minds" among any of the Defendants. Plaintiff neither states what is encompassed by Section 1985 as "conspiratorial" actions by any Defendant, nor alleges how the Defendants acted in concert with one another. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). Although Plaintiff makes some allegations of relationships between the alleged co-conspirators, she has done so by way of freewheeling and speculative allegations which fail to raise a reasonable inference of a conspiracy. *See* DE 64 (citing *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir. 1975); *Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972); *Powell v. Workmen's Comp. Bd.*, 327 F.2d 131, 137 (2d Cir. 1964) ("It was incumbent upon [plaintiff] to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.")). For example, Plaintiff claims that the Towner Defendants and Helga Morpurgo have "actively cooperated with the Sag Harbor Village Police in making repeated attempts to constructively evict and force Plaintiff to sell her residence at a fraction of its . . . listed asking price[,]" over what Plaintiff claims is a "long period of years." Am. Compl. at 9. As so-called evidence of such conduct, Plaintiff refers the Court to stories in the local press which Plaintiff apparently believes provide a foundation for her conspiracy theory and claim. None of this information provides a factual basis for the contention that there was some meeting of the minds to achieve an unlawful act against Plaintiff. Therefore, Plaintiff's

conclusory allegations do not suffice to state a claim for relief under Section 1985 that is plausible on its face.

Plaintiff's Section 1985(3) claims also fail because Plaintiff has not established that she is a member of a cognizable "class" protected by the statute. *See Gleason v. McBride*, 869 F.2d 688, 694-95 (2d Cir. 1989). Plaintiff is also required to show that Defendants conspired with each other to deprive her, or the class of which she is a member, of the equal protection of the laws, or equal privileges and immunities under the laws. *See Sorlucco v. New York City Police Dep't*, 888 F.2d 4, 8 (2d Cir. 1989)

When a plaintiff fails to establish membership in a protected group, a civil rights conspiracy complaint under Section 1985 may be dismissed. *Srubar*, 875 F. Supp. at 162 (citing *Gleason*, 869 F.2d at 694-95). In the instant case, Plaintiff alleges that Defendants conspired "to deprive her, as an *impoverished senior citizen*," of her Fourteenth Amendment rights, and her rights to equal protection under the law . . . ." Am. Compl. at 4 (emphasis added). Plaintiff further maintains that Fire Marshal Platt's designation of the entire building as unfit for human occupancy without adequate notice to Plaintiff, "an *impoverished senior citizen*, was done to "constructively evict Plaintiff, *a senior*, from her own home and the neighborhood in violation of her First, Fourth, Fifth and Fourteenth Amendment rights. . . ." *Id*. at 7 (emphasis added); *see also id*. at 8.

In her opposition papers, Plaintiff argues that her identification as an "impoverished senior" is sufficient because it "is a narrower class protected under the human rights statutes of New York State." Pl.'s SCWA Opp'n,[DE 40], ¶ 8; Pl.'s Darrow  Opp'n [DE 61], ¶ 11. However, Plaintiff does not establish that "impoverished senior citizens" constitute a protected

class under the circumstances present here, and the Court is unaware of any legal precedent supporting Plaintiff's claims. Moreover, Plaintiff has not shown that the purported conspiracy was conducted for the purpose of discriminating against Plaintiff as an *impoverished senior citizen*. To the contrary, Plaintiff repeatedly alleges that the purpose of the purported conspiracy was to "constructively evict" her from her home so that the John Jermain Memorial Library could expand onto her property.

Plaintiff refers to the fact that "a rival nonprofit," the Savant Garde Institute, maintains offices on the Property. Reading Plaintiff's claims broadly, Plaintiff asserts that the purported conspiracy is aimed toward eliminating the Savant Garde Institute for the benefit of the Library because the residents of Sag Harbor and/or certain Sag Harbor officials, for whatever reason, favor the Library. However, Section 1985 "does not 'reach conspiracies motivated by bias towards others on account of their economic views, status or activities.'" *Blankman v. Cty. of Nassau*, 819 F. Supp. 198, 206 (E.D.N.Y. 1993) (quoting *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 837 (1983)). Thus, under the circumstances presented here, Plaintiff's claim that Defendants are conspiring to deprive Plaintiff of the Property for the purpose of benefiting the Library is not actionable under Section 1985.

Additionally, in opposing the motions to dismiss, Plaintiff, for the first time, asserts that she is "female, often perceived to be 'of color' (on my mother's side I am Scandinavian; on my father's side, dark-skinned Sephardim- i.e., Austrian-Italian-Egyptian-Portuguese-Hebrew), and further a landlord always complying with the housing opportunity statutes of New York State. . . ." Pl.'s SCWA Opp'n, ¶ 8; Pl.'s Opp'n to Darrow Mem., ¶ 11. Alternatively, Plaintiff maintains that she is "female, unisex and unirace, mildly-obese, too-short, not-white-enough, prone to

having minority houseguests, and outspoken religious skeptic, a published author on public record as a human rights leader/activist, etc." Pl.'s Towner Opp'n., ¶ 5. However, Plaintiff does not allege that Defendants conspired against her for any of these reasons. Rather, in the same paragraph, Plaintiff states that she brings this lawsuit because the "corrupt constituency of a corrupt municipality" where she resides "has repeatedly blocked [her] from improving [the property], under color of law, because they are seeking to acquire it for pennies on the dollar for precisely the same type of multiuse multifamily development that would pay for Library expansion strictly through their 'Old-Boy' network." *Id*. Thus, notwithstanding Plaintiff's argument that she has adequately alleged membership in a protected class, Plaintiff does not allege that the purpose of the conspiracy was in any way related to or directed toward her membership in such class. The Court finds, therefore, that Plaintiff has neither (1) established that any of the asserted identifications constitutes a protected class under the instant circumstances, nor (2) demonstrated that she was the victim of the purported conspiracy for reasons related to membership in such class.

Thus, in view of the restrictive interpretation afforded Section 1985 by the Supreme Court (*see Bray*, 506 U.S. at 269), and Plaintiff's failure to allege membership in a protected class, I find that Plaintiff has not sufficiently alleged a cause of action pursuant to Section 1985. Accordingly, I respectfully recommend to Judge Seybert that Plaintiff's Section 1985 claims be dismissed.

## V.    LEAVE TO AMEND

In the opposition papers filed in response to various motions to dismiss, Plaintiff requests, in the event the Court finds the Amended Complaint is inadequately pleaded, that she be allowed

"to file a Second Amended Complaint in the form of an Affidavit with consecutively number paragraphs together with even more allegations and identified Defendants for wrongful acts still continuing since the filing of the initial Complaints."  *See*, *e.g.*, Pl.'s Sag Harbor Opp'n, ¶¶ 3, 4. In their respective Reply Memoranda, the Defendants who address the issue universally oppose Plaintiff's request for leave to amend.  *See, e.g.*, SCWA Reply Mem., ¶ 9; Darrow Reply Mem. at 3.

Generally, "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002).  Although the usual practice upon granting a motion to dismiss is to allow leave to replead, a court may dismiss without leave to amend when amendment would be futile (*Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)), or when the "substance of the claim pleaded is frivolous on its face."  *Bloom v. United States Gov't*, 02 Civ. 2352,  2003 WL 22327163, at *8 (S.D.N.Y. Oct. 10, 2003) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1998)).  A claim is frivolous when it is vague and incomprehensible, or when it is supported by baseless factual allegations "describing fantastic or delusional scenarios."  *Bloom*,  2003 WL 22327163, at *8 (citations omitted).

Having carefully considered the Amended Complaint, Defendants' motions to dismiss, and Plaintiff's oppositions to such motions, I find that granting leave to replead would be futile in light of the grounds upon which I am recommending dismissal of the Amended Complaint. With respect to the Sag Harbor Defendants and the SCWA Defendants, Plaintiff has not shown that the incidents described in the Amended Complaint amount to "government custom or

policy" that rises to the level of a viable claim against a municipality under the applicable law.  In her opposition papers to the myriad motions to dismiss, Plaintiff did not address how she intends to satisfy this pleading requirement.  Moreover, Plaintiff has not shown that any of the municipal Defendants did anything that rises to the level of misconduct, or conduct that violated Plaintiff's constitutional rights.

Regarding Plaintiff's Section 1983 conspiracy claims against the remaining Defendants, all of whom are private actors or entities, Plaintiff has not satisfied the state actor requirement. Despite the fact that several Defendants raised this issue in their respective memoranda of law, o dismiss, Plaintiff did not identify in her opposition papers any state action alleged in the Amended Complaint with respect to these Defendants, nor did she address how she intended to satisfy the state actor requirement.  *See Sanchez v. Thompson*, 07-CV-531, 2007 WL 4574727, at *5 (E.D.N.Y. Dec. 26, 2007).

As to Plaintiff's Section 1985(3) claims, even if the Court were to assume that at least one of the "classes" to which Plaintiff claims she belongs constitutes a protected class for purposes of Section 1985, Plaintiff has *not* alleged that the purpose of the purported conspiracy was in any way related to her membership in such class.  Under the circumstances present here, the Court does not see how the Amended Complaint alleges facts sufficient to establish a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

Further, it is highly unlikely that Plaintiff will be able to correct the pleading defects identified herein.  Accordingly, I respectfully recommend to Judge Seybert that Plaintiff's request for leave to replead be DENIED.

## VI.  IN FORMA PAUPERIS

Also before the Court is the parties' dispute regarding whether Plaintiff should be permitted to retain the *in forma pauperis* status previously granted [DE 98, 109].  The Court need not address this issue at this time.  In light of my recommendation that Defendants' motions to dismiss be granted and Plaintiff's Amended Complaint be dismissed in its entirety, I am also recommending that the Sag Harbor Defendant's motion to revoke Plaintiff's *in forma pauperis* status be deemed MOOT.

## VII.  CONCLUSION

In light of the analysis set forth above, I respectfully recommend to Judge Seybert that Defendants' motions to dismiss be granted and that Plaintiff's Amended Complaint be dismissed in its entirety.  I further recommend that the Sag Harbor Defendants' motion to revoke Plaintiff's *in forma pauperis* status be deemed MOOT.

*** 

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a) and (e).  Such objections shall be filed with the Clerk of the Court via ECF, except in the case of a party proceeding *pro se*.  *Pro Se* Plaintiff Anselm Morpurgo must file her objections in writing with the Clerk of the Court within the prescribed time period noted above.  A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Joanna Seybert, and to my Chambers as well.  Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections.  Failure

to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Counsel for the Sag Harbor Defendants is directed to serve a copy of this Report and Recommendation forthwith upon Plaintiff *Pro Se* by overnight mail and first class mail. Defendants' counsel is further directed to file proof of service on ECF.

SO ORDERED.

Dated: Central Islip, New York
February 17, 2009

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge